**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 94-30234

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FELIX A. RIGGIO,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana

November 21, 1995

Before POLITZ, Chief Judge, WISDOM and STEWART, Circuit Judges.

POLITZ, Chief Judge:

Felix A. Riggio appeals his convictions of conspiracy to commit arson and the use of fire in the commission of a federal felony. Finding no error, we affirm.

Background

On March 21, 1991, the Ken Hebert Chevrolet dealership in Marksville, Louisiana was seriously damaged by a fire found to be the product of arson. Sometime prior thereto, Ken Hebert, the owner of the dealership, encountered financial difficulties and decided to torch the building to collect on an F&EC insurance policy. Hebert enlisted an employee, Louis Chedville, to set fire to the building. Chedville received $6000 and he in turn hired Felix "Pete" Riggio to do the job for $5000. Pursuant to a plea agreement, Hebert admitted

that he conspired to commit arson and to defraud his insurance company. Chedville pled guilty to attempted arson and conspiracy to commit arson.

In due course Riggio was indicted for conspiracy to commit arson,[1] arson,[2] and use of fire to commit a federal felony.[3] An *in limine* motion to dismiss the use of fire charge as duplicative of the arson charge was denied. Riggio was tried on all three counts. Wary over concerns of possible jury tampering, the district court empaneled an anonymous jury, finding same necessary because the record reflected that witnesses were allegedly threatened,[4] the defendant had been accused of jury tampering in a previous case, and he allegedly had ties to organized crime.[5]

Hebert, Chedville, and Jerry Young, an employee of Riggio, all testified about Riggio's involvement in the conspiracy. On direct examination Riggio stated, "I've never burned down anything in my life." Over his objections the prosecution cross-examined him about previous fires for which no charges had been made.[6] In defense, Riggio testified that he could not have committed the crime because at the time of the fire he was watching a

---

[1] 18 U.S.C. § 371 (1994).

[2] 18 U.S.C. § 844(I) (1994).

[3] 18 U.S.C. § 844(h)(1) (1994).

[4] The record reflects that witness A was told he would be a "dead mother" if he cooperated, witness B was told Riggio would "blow his brains out," and witness C was told that the witnesses would become a part of "history . . . real quick."

[5] Riggio subsequently was indicted, along with a number of alleged organized crime figures, for a conspiracy involving video poker gaming in Louisiana.

[6] Riggio testified that he received insurance proceeds for fire damage at his home and for the destruction by fire of his truck. He admitted that he had been behind on payments for both the house and the truck. Riggio also testified that he received $800 from the insurance proceeds for the destruction of a duplex and a mobile home that was parked near one of his apartments. He admitted that he had taken out insurance policies on these properties and that he brought the beneficiary to the insurance company to collect the proceeds.

basketball game.

Riggio was convicted of conspiracy to commit arson and use of fire in the commission of a federal felony. He was sentenced to consecutive prison terms of 41 and 60 months, respectively, and timely appealed.

Analysis

A.    Double Jeopardy

Riggio contends that his conviction for both the use of fire in the commission of a federal felony and conspiracy to commit arson violated the fifth amendment bar against double jeopardy. In **Blockburger v. United States**,[7] the Supreme Court detailed the test to determine if an individual is being punished twice for the same offense:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.[8]

In the absence of clear, contrary legislative intent, two statutory provisions which proscribe the same offense should not be construed to authorize cumulative punishment.[9] In the matter at bar we must determine whether conspiracy to commit arson and the use of fire in the commission of a felony are duplicative when the use of fire charge is based upon the conspiracy to commit arson. Additionally, we must determine if Congress intended to authorize cumulative punishments for these offenses.

We conclude that conspiracy to commit arson may serve as the predicate felony for a use of fire charge. The conspiracy statute is aimed at punishing persons acting in concert

---

[7] 284 U.S. 299 (1932).

[8] **Id.** at 304.

[9] **Whalen v. United States**, 445 U.S. 684 (1980).

3

to commit an offense. Arson and the use of fire statutes are aimed at punishing those who make criminal use of fire.[10] Conspiracy to commit arson does not require that the individual defendant actually use fire.[11] The additional element of using fire must be proved for a conviction of the use of fire during the commission of a felony charge under 18 U.S.C. § 844(h)(1). Conspiracy to commit arson and the use of fire in the commission of a felony are not duplicative.[12]

It is clear that Congress intended that the penalties from these charges would be cumulative. 18 U.S.C. § 844(h)(1) provides that anyone convicted of using fire in the commission of a felony shall receive an additional sentence of between five and fifteen years. The statute expressly provides that the sentence is not to run concurrent with any other sentence and cannot be suspended.[13] The district court acted properly in imposing the consecutive sentence of 60 months for the use of fire in addition to the sentence imposed for conspiracy.

B.    Evidence of Other Fires

We next address Riggio's challenge to the admission of evidence concerning specific instances of conduct. During cross-examination he was questioned about four separate fires

---

[10]The instant case is different from the situation in which the defendant is convicted of arson and the use of fire charge. **United States v. Chaney**, 559 F.2d 1094 (7th Cir. 1977) (holding that arson cannot be the underlying felony for a charge under 18 U.S.C. § 844(h)(1) because arson obviously requires the use of fire).

[11]Conspiracy to commit arson requires that two or more individuals plan to use fire in maliciously destroying or damaging a building used in interstate commerce and one or more of the conspirators must perform an act to further the object of the conspiracy. 18 U.S.C. §§ 371 and 844(I). The actual use of fire is not a requirement of the statute.

[12]This situation is analogous to one in which a defendant is charged with both conspiracy and the underlying substantive charge, a dual charging which clearly is not barred by double jeopardy.

[13]18 U.S.C. § 844(h) (1994).

4

for which no charges had been made. Riggio maintains that the district court should have granted a mistrial because references to these fires violated Federal Rule of Evidence 404(b). The trial court's decision to admit evidence is reviewed for abuse of discretion.[14] It cannot be gainsaid that evidence of past crimes or bad acts is inadmissible under Rule 404(b) when it is used to prove a defendant's bad character.[15] Similarly, Rule 608(b) provides that "[s]pecific instances of conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction . . ., may not be proved by extrinsic evidence."[16] At the discretion of the trial court, however, prior conduct may be inquired into on cross-examination of a witness if the evidence tends to test the truthfulness of testimony given on direct examination.[17] Rule 608(b) clearly applies to evidence introduced to impeach the testimony of a witness.

The evidence in this case was introduced to rebut the testimony of the defendant, and thus the appropriate analysis is under Rule 608(b). Evidence of Riggio's credibility was highly probative. He testified at length about his lack of involvement in the charged offense, making his credibility a central issue in the case. He specifically testified, "I've never burned anything down in my life," and "I never been involved in criminal activity." The cross-examination into certain specific instances of conduct, or misconduct, was appropriate. The district court's decision to admit this impeachment evidence was neither erroneous nor an abuse of discretion.

   C.   <u>Jury Anonymity</u>

---

[14]**United States v. Townsend**, 31 F.3d 262 (5th Cir. 1994).

[15]Fed.R.Evid. 404(b).

[16]Fed.R.Evid. 608(b).

[17]Fed.R.Evid. 608(b); **United States v. Blake**, 941 F.2d 334 (5th Cir. 1991).

Finally, we address Riggio's challenge to the decision by the district court to empanel an anonymous jury. He complains that he was denied his right to fair trial because the conduct attributed to him did not rise to the level warranting or justifying an anonymous jury. Mindful of the standard for empaneling an anonymous jury recently announced in **United States v. Krout**,[18] we conclude that the use of the anonymous jury in this case was appropriate.

We review the anonymous jury issue under the abuse of discretion standard, according great discretion to the trial court. In **Krout** we noted the careful and limited use of this measure but found same constitutional when needed to ensure against a serious threat to juror safety provided the defendant's interest in the conduct of an effective voir dire of prospective jurors and the presumption of innocence are maintained. In determining whether jurors need protection, the district court should consider the defendant's involvement in organized crime, his past attempts at interfering with judicial proceedings, his previous history of violence, the extent of press coverage, and the likelihood of juror harassment or intimidation.[19]

In the present case, the empaneling of an anonymous jury was not inappropriate. Considering the indications of Riggio's organized crime connections,[20] his previous instance

---

[18]66 F.3d 1430 (5th Cir. 1995).

[19]**United States v. Puccione**, 949 F.2d 1183 (2d Cir. 1991).

[20]On several occasions, the record indicates that Riggio boasted about his connection with the mafia and, when arrested, he was carrying documents linking him to alleged mob figures.

6

of jury fraud,[21] and the nature of the crime charged,[22] the district court was justified in finding that the jury needed protection. Further, the district court took effective steps to minimize any prejudicial effects associated with an anonymous jury.[23]

AFFIRMED.

---

[21]Riggio committed fraud in order to serve on another jury, demonstrating a lack of respect for the judicial process and suggesting that he was capable of and willing to interfere with the jury system.

[22]The crimes with which Riggio was charged were substantial enough to cause apprehension on the part of the jury. Witnesses testified that they were threatened by Riggio. The district court had a reasonable basis to conclude that similar threats and attempts at intimidation were likely to be made to the jurors if their identities were known.

[23]Careful instructions were given to the jurors, explaining that the use of numbers instead of names for them was standard procedure in criminal cases. This neutral explanation caused no unfair prejudice to Riggio.