# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 10, 2009

Charles R. Fulbruge III
Clerk

No. 07-40615

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

CURTIS RAY SEVERNS,

Defendant–Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

Before JOLLY, CLEMENT, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Curtis Ray Severns was convicted and sentenced for mail fraud, wire fraud, arson, use of fire to commit mail fraud, and use of fire to commit wire fraud arising out of a conflagration that destroyed his business and his subsequent attempt to collect insurance proceeds. Severns contends on appeal that (1) he is entitled to a new trial because the Government failed to disclose exculpatory evidence and because he has discovered new evidence; (2) there is insufficient evidence to support the jury's finding that a firefighter suffered injury while responding to the fire; (3) the Double Jeopardy Clause of the Fifth Amendment has been violated because of consecutive sentences for the same conduct; and (4) there was a single fire, and 18 U.S.C. § 844(h) does not permit

convictions for both using fire to commit mail fraud and using fire to commit wire fraud. Severns prevails on only the latter issue. We agree that only one conviction and sentence enhancement for use of fire to commit a felony can be sustained when a single fire was the basis for the enhancement. We vacate and remand to the district court for resentencing after the Government has elected the convictions on which to base sentences.

I

Shortly after 10:30 one evening, a fire erupted at a gun store owned by Lone Star Guns, Inc. Severns was the president and sole shareholder of Lone Star Guns.

Authorities were alerted when the movement of heat from the fire triggered a motion detector that was part of the Lone Star Gun's burglar-alarm system. Severns told police that he was the last person to leave the building that night. He maintains that he left at 10:30 p.m. after activating the alarm system and locking the premises. However, credit-card receipts indicate that Severns was at a gas station three miles from the store, approximately a five-minute drive, at 10:58 p.m. The alarm signal from the gun store was transmitted at 10:53 p.m.

At the time of the fire, Severns had debts related to Lone Star Guns totaling $183,668. Severns had obtained insurance for the corporation with coverage limits of $250,000 for loss of business personal property, $60,000 for the loss of personal property of others, and $40,000 for business interruption. Severns filed a claim after the fire, and the insuring company determined there had been a total loss resulting in damage equal to or in excess of the coverage limits.

Fire investigators with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and the Plano Fire Department determined that the fire was

intentionally set, and Severns was charged with seventeen counts: Counts 1–5 (mail fraud in violation of 18 U.S.C. § 1341); Counts 6–14 (wire fraud in violation of 18 U.S.C. § 1343); Count 15 (arson resulting in personal injury in violation of 18 U.S.C. § 844(i) based on a firefighter's injury); Count 16 (use of fire to commit mail fraud in violation of 18 U.S.C. § 844(h)); and Count 17 (use of fire to commit wire fraud in violation of 18 U.S.C. § 844(h)).

At trial, one of the principal issues was whether the fire was intentionally set. The prosecution called a number of expert witnesses who testified that the fire must have been arson because it had three points of origin—a workbench on the east side of the store, an island workbench at the center of the store, and a U-shaped area formed by shelves to the north of the central island. The defense contended that the fire started accidentally from an electrical malfunction near the east workbench and that either exploding aerosol cans or burning "fall-down" material from the ceiling spread flames to the other two locations. Both sides called expert witnesses who provided conflicting testimony as to the ability of aerosol cans to communicate a fire to separate areas of an enclosed room and the possibility that aerosol cans found in the debris after the fire at Lone Star Gun could have been the cause of two of the points of origin.

At the end of the trial, the jury convicted Severns on all counts. The district court granted a post-verdict judgment of acquittal on Count 13, one of the charges of wire fraud.

Approximately two weeks after Severns's trial ended, a copy of an ATF training video depicting aerosol cans exploding during a house fire and igniting a blaze in another area was posted to a professional-fire-investigation forum on the Internet. In the video, the ATF started a fire in the kitchen of a home by placing a box on a stove. The cabinets above the stove were filled with aerosol cans and other combustible items. After the fire had burned for several minutes, the video shows an explosion that projects fire to other areas of the room. Two

of those satellite fires continued to burn after the initial explosion. Minutes after those ignitions, another explosion occurred that sent an aerosol can flying away from the fire and bouncing around the room. Kelton Thornton, an ATF Supervisor who worked on the prosecution team in Severns's case, was present at the filming of the video.

Severns's attorney discovered the ATF training video and filed a motion for a new trial. He argued that the video should have been disclosed to him by the prosecution because it was material to the outcome of Severns's case. He also argued that since trial, he had discovered the manual for Lone Star Gun's alarm system and that it supported Severns's contention that he could not have set the alarm after starting the fire because the motion detector would have detected the heat and would not have allowed the system to arm. The district court denied Severns's motion.

The court subsequently sentenced Severns to 324 months of imprisonment, consisting of concurrent terms of 57 months on Counts 1-12 and 14 (mail and wire fraud), a concurrent term of 84 months on Count 15 (arson resulting in personal injury), a consecutive term of 120 months on Count 16 (use of fire to commit mail fraud) and consecutive to that, a term of 120 months on Count 17 (use of fire to commit wire fraud). Severns was also ordered to pay $1,600 in assessments ($100 for each of his sixteen convictions), and $462,602.47 in restitution. Severns has pursued this appeal.

II

The first issue we address is whether the prosecution violated Brady v. Maryland[1] by failing to disclose the ATF video and whether the district court erred in denying Severns's motion for a new trial. This court reviews the denial

---

[1] 373 U.S. 83 (1963).

of a motion for a new trial for abuse of discretion.[2]  However, where the motion for a new trial is based on an alleged Brady violation, the Brady determination is "inevitably a contextual inquiry, involving questions of both law and fact."[3] While we examine the Brady question de novo, "we must proceed with deference to the factual findings underlying the district court's decision."[4]

When a motion for a new trial based on newly discovered evidence raises a claim under Brady, the defendant must demonstrate that (1) the prosecution suppressed evidence; (2) the evidence was favorable to him; and (3) the evidence was material either to guilt or punishment.[5]  The Government has a "duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."[6]  Evidence is material if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[7]  "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."[8]

---

[2] United States v. Wall, 389 F.3d 457, 465 (5th Cir. 2004).

[3] United States v. Sipe, 388 F.3d 471, 479 (5th Cir. 2004).

[4] Id.

[5] United States v. Runyan, 290 F.3d 223, 247 (5th Cir. 2002) (citing Brady, 373 U.S. at 87).

[6] Titsworth v. Dretke, 401 F.3d 301, 306 (5th Cir. 2005) (quoting Kyles v. Whitley, 514 U.S. 419, 437 (1995)).

[7] Pennsylvania v. Ritchie, 480 U.S. 39, 57 (1987) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985) (opinion of BLACKMUN, J.) and citing Bagley, 473 U.S. at 685 (WHITE, J., concurring in part and concurring in judgment)).

[8] Ritchie, 480 U.S. at 57 (quoting Bagley, 473 U.S. at 682 (opinion of BLACKMUN, J.) and citing Bagley, 473 U.S. at 685 (WHITE, J., concurring in part and concurring in judgment)).

A

Severns argues that the prosecutor's failure to disclose the existence of the ATF training video depicting the exploding aerosol cans violated the duty explicated in Brady. The Government contends that its duty to disclose does not extend to evidence not known by the prosecution team at the time of trial and that no one on the prosecution team was aware of the existence of the ATF video. However, Kelton Thornton, an ATF Supervisor present at the creation of the ATF video, was part of the team that prosecuted Severns. By his own admission, Thornton "supervised the fire investigation scene as well as the arson investigation that was conducted following the [Lone Star Guns] fire," and he "was present when the test fire shown in [the ATF] video was conducted." The Government's argument in this regard is not well-taken.

B

The Government asserts that the failure to disclose the ATF video should not result in a new trial because there was no "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[9] We agree.

At trial, one of the Goverenment's experts, Steven Steele, testified that he was able to rule out the aerosol cans as the method for fire communication based on the location of the cans and his interpretation of the burn patterns. He testified that the blazes in each of the three ignition areas had burned for "approximately the same amount of time," whereas the aerosol cans must have exploded late in the fire, because they were found on top of the debris pile. According to Steele, this discrepancy in timing eliminated the possibility that the cans could have caused the other two fires. None of the defense's experts disputed this testimony, nor did they present alternate theories explaining the

---

[9] Bagley, 473 U.S. at 682.

timing discrepancy. The video provides no evidence refuting Steele's testimony on this point.

Another Government witness, John DeHaan, testified that most of the aerosol cans were found under the east workbench next to a large barrel of bluing salts and that a can exploding "under [the east workbench] would not be expected to move any distance at all" because "that drum is sitting right there and blocking its travel." Again, the defense neither disputed this testimony at trial nor provided any alternate theories as to how aerosol cans could have avoided such obstacles, and the video does not explain how a can could have done so either.

The Government asserts that had the ATF video been shown at trial, Steele would have been able to explain why the aerosol cans could not have accounted for the three origins in the Lone Star Guns fire. In an affidavit after trial, Steele stated that the aerosol cans in the Lone Star Guns fire were "at or near floor level and there were numerous obstructions between the area where these cans exploded and the other two areas of origin." According to Steele, one of the areas of fire origin (the U-shaped area) "was in a corner behind an approximately 6 foot tall desk/bookshelf" and "was not in direct line of sight" from the origin containing the aerosol cans. The third fire origin was in a "four side[d] bin that had a work bench and ceiling[-]high shelf between it and the exploding aerosol cans."

At trial, one of Severns's experts, Michael Smith, testified that the fire in the U-shaped area could have started if an exploding can hit the ceiling and the flame plumed out from there to reach the area. Another defense witness, Gerald Hurst, testified that burning fall-down material from the ceiling was likely the cause of the fire in the U-shaped area. However, this testimony fails to account for Steele's testimony regarding the timing of the fire and DeHaan's testimony and photographic evidence regarding the barrel blocking the cans.

Severns has been unable to provide a coherent explanation for how the cans could have started two of the three fires in any of his briefs or evidence since the trial. He has not met his burden of showing that there is a reasonable probability of a different outcome.

Severns asserts that the ATF video shows that Steele gave false testimony with respect to the ability of aerosol cans to explode generally, and where false testimony is alleged, a less stringent standard applies. There has been no showing that the expert knowingly gave incorrect testimony. In any event, even if false testimony is presented, a new trial is not warranted unless there is a reasonable likelihood that the false testimony could have affected the jury's determination.[10] For the same reasons that the failure to disclose the ATF video fails to meet the Brady standard when there has been no false testimony, Severns cannot prevail. He has not presented evidence or even a logical theory as to how the aerosol cans in this particular case could have surmounted physical obstacles between one point of the fire's origin and the other two. There is no reasonable likelihood that the jury's decision after a new trial would be different.

## III

Severns contends that the ATF video and the alarm operation manual qualify as newly discovered evidence and that the district court erred in denying his motion for a new trial based on this newly discovered evidence. "We review [the] district court's denial of a motion for a new trial based on newly discovered evidence for abuse of discretion."[11] Such motions are disfavored and reviewed

---

[10] See Moody v. Johnson, 139 F.3d 477, 484 (5th Cir. 1998) ("[I]f false evidence is presented by the prosecution at trial, a new trial is warranted only if the false testimony could have, in any reasonable likelihood, affected the jury's determination.").

[11] United States v. Erwin, 277 F.3d 727, 731 (5th Cir. 2001).

with great caution.[12]  To obtain a new trial, a "defendant must prove: (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence if introduced at a new trial would probably produce an acquittal."[13]

For the reasons considered above, the ATF video does not meet the requirements for a new trial based on newly discovered evidence.  The alarm operation manual also fails to meet the newly discovered evidence requirement because the manual had been available on a publicly accessible Internet site for over ten years.  Severns's failure to discover this evidence was due to his own lack of diligence.  We cannot say that the district court abused its discretion in denying Severns's motion for a new trial based on newly discovered evidence.


IV

Count 15 of the indictment alleged that Severns damaged and destroyed a building and other real and personal property by means of fire, "which resulted in personal injury to a public safety officer performing duties, a violation of [18 U.S.C.] Section[] 844(i)."  The jury found Severns guilty as charged.  The jury also answered "yes" to a question inquiring if it found "beyond a reasonable doubt that the fire at Lone Star Guns, Inc., resulted in personal injury to any person, including a public safety officer performing duties as a direct or proximate result of the fire."  These findings resulted in a minimum seven-year

---

[12] Id.

[13] United States v. Wall, 389 F.3d 457, 467 (5th Cir. 2004).

sentence for arson rather than a five-year minimum sentence.[14] Severns contends the evidence was insufficient to support the personal injury findings.

Because Severns properly preserved his sufficiency-of-the-evidence issue by moving for a judgment of acquittal at trial, we review de novo.[15] We will affirm the district court if a reasonable trier of fact could conclude that the "elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict."[16]

At trial, Captain Toby Peacock of the Plano Fire Department testified that while fighting the fire at Lone Star Guns, he aggravated an old injury to his back, which caused him considerable pain and discomfort. He related that during "fire overhaul," which means searching for hidden fire or embers inside walls, closets, above the ceiling, or other places where fire may be hidden after the main blaze has been extinguished, he did something that aggravated a spot in his back and caused pain between his shoulders. His air tank aggravated it more, and he related that he subsequently sought treatment from a physician, received two injections in his back, and recovered in two or three months.

Neither Severns nor the Government has provided us with any case law or other guidance in construing what is meant by "personal injury" in § 844(i) or any other federal statute. We will therefore give that term its commonly understood meaning.

Severns contends that aggravating a previous injury does not constitute "personal injury" under § 844(i). However, he again cites no authority for such

---

[14] See 18 U.S.C. § 844(i) (providing for a mandatory minimum seven-year sentence for damage or destruction of a building by means of fire "if personal injury results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection").

[15] See United States v. McDowell, 498 F.3d 308, 312 (5th Cir. 2007).

[16] Id.

a proposition, and we see no reason why aggravation of an old injury would not be a "personal injury" within the meaning of the statute.

Severns argues that the Government failed to present any medical evidence as to the cause or extent of Captain Peacock's injury. Captain Peacock's testimony that he sustained an injury, its nature, and his description of the medical treatment he received for it was adequate for the jury reasonably to conclude that an injury occurred. The injury was not extensive, but it would be a compensable personal injury in a civil action, although the compensation might be relatively minimal.

Severns asserts that the Government had the burden of showing that it was foreseeable that a firefighter wearing his normal breathing equipment in the course of fighting the fire "would somehow be injured by wearing that equipment at this fire." Section 844(i) requires only that "personal injury results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection." Captain Peacock did not explain in great detail how his injury occurred, but he did testify that it occurred as a result of his firefighting activities and that the equipment on his back exacerbated the pain. His injury was a direct and proximate result of the arson. There was sufficient evidence to support the jury's verdict regarding personal injury to a firefighter.

V

Severns contends that he has received consecutive sentences punishing him for the same conduct in violation of the Double Jeopardy Clause of the Fifth Amendment.[17] He maintains that his sentence for use of fire to commit mail fraud punishes him for the same conduct as his sentences for arson and mail

---

[17] U.S. CONST. amend. V ("nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb").

fraud. Severns asserts that once mail fraud and arson have been proven, use of fire to commit mail fraud has been proven. He makes the same argument regarding punishment for arson, wire fraud, and use of fire to commit wire fraud. As we consider in more detail below, the ultimate question we must answer is whether Congress expressed a clear intent to permit punishment cumulatively (consecutively) for arson, for another felony offense, and for "use" of the arson fire in committing that other offense. We review this question of law de novo.[18]

## A

The Supreme Court has explained that "[t]he Double Jeopardy Clause is cast explicitly in terms of being 'twice put in jeopardy,'"[19] and that Court has "consistently interpreted [the Double Jeopardy Clause] 'to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.'"[20] "With respect to cumulative sentences imposed in a single trial," the Supreme Court has held that "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."[21] One of the Court's seminal decisions in this area, Blockburger v. United States, stated that "[t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."[22] The Supreme Court has subsequently explained that

---

[18] United States v. Smith, 354 F.3d 390, 398 (5th Cir. 2003).

[19] Missouri v. Hunter, 459 U.S. 359, 365 (1983).

[20] Id. (quoting Burks v. United States, 437 U.S. 1, 11 (1978)) (internal quotations omitted).

[21] Id. at 366.

[22] 284 U.S. 299, 304 (1932).

"'[t]he assumption underlying [this] rule is that Congress ordinarily does not intend to punish the same offense under two different statutes.'"[23] It follows that "'where two statutory provisions proscribe the "same offense," they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent.'"[24] The Supreme Court made clear in Missouri v. Hunter that the Blockburger inquiry as to whether two statutes proscribe the same conduct is a rule of statutory construction utilized when the legislative body's intent is not clear.[25] When a state or federal "legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under Blockburger, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial."[26]

## B

The statute primarily at issue is 18 U.S.C. § 844(h), which provides for an enhanced sentence when fire or explosives are used to commit a felony. The Government contends that § 844(h) specifically authorizes cumulative punishment for the same conduct. That subsection provides, in pertinent part:

> Whoever . . . uses fire . . . to commit any felony which may be prosecuted in a court of the United States . . . shall, in addition to the punishment provided for such felony, be sentenced to imprisonment for 10 years. . . . [T]he term of imprisonment imposed under this

---

[23] Hunter, 459 U.S. at 366 (quoting Whalen v. United States, 445 U.S. 684, 691 (1980)).

[24] Id. (quoting Whalen, 445 U.S. at 691-92).

[25] Id. at 368.

[26] Id. at 368-69 ; see also United States v. Corona, 108 F.3d 565, 572 (5th Cir. 1997) ("When multiple punishments are at issue, our inquiry focuses on whether Congress intended for the defendant's actions to be subject to the punishment received. If statutory language authorizes the punishment, there can be no double jeopardy violation.").

> subsection [shall not] run concurrently with any other term of imprisonment including that imposed for the felony in which the explosive was used or carried.[27]

Our court has interpreted and applied § 844(h) in prior decisions. As an initial matter, we have held that although the statute refers to "the explosive . . . used or carried" in providing for a consecutive period of imprisonment, this reference was intended to include of the use of fire.[28] Congress has stated clearly and directly that an additional ten-year term of imprisonment should be imposed, to run consecutively, if a conviction is obtained for the use of fire under § 844(h). We held in United States v. Creech that sentences for both mail fraud under 18 U.S.C. § 1341 and use of fire during the commission of mail fraud based on § 844(h) did not violate the Double Jeopardy Clause.[29]

Our court has also concluded that § 844(h) authorizes convictions and cumulative sentences for conspiracy to commit arson and use of fire to commit a felony even "when the use of fire charge is based upon the conspiracy to commit arson."[30] We reasoned in Riggio that "[t]he conspiracy statute is aimed at punishing persons acting in concert to commit an offense," while "[a]rson and the use of fire statutes are aimed at punishing those who make criminal use of fire."[31] We noted that the elements of proof for conspiracy to commit arson and use of fire to commit conspiracy to commit arson differed because "[c]onspiracy to commit arson does not require that the individual defendant actually use

---

[27] 18 U.S.C. § 844(h) (emphasis added).

[28] United States v. Creech, 408 F.3d 264, 272-73 (5th Cir. 2005) (agreeing with other circuit courts that Congress intended to treat the use of fire and use of explosives interchangeably).

[29] Id. at 273; see also United States v. Fiore, 821 F.2d 127, 130-31 (2d Cir. 1987).

[30] United States v. Riggio, 70 F.3d 336, 338 (5th Cir. 1995) ("We conclude that conspiracy to commit arson may serve as the predicate felony for a use of fire charge.").

[31] Id.

fire."[32]   However, we indicated in dicta that we did not perceive any congressional intent to impose an additional ten-year term of imprisonment when the predicate felony for use of fire is an arson conviction under 18 U.S.C. § 844(i),[33] when we noted that the facts in Riggio were "different from the situation in which the defendant is convicted of arson" and the arson is the underlying offense for the use of fire conviction and sentencing enhancement.[34]

Were we writing on a clean slate, we might consider congressional intent in more detail to determine whether Congress expressed an intent to allow the sentencing enhancement in § 844(h)(1) to apply to all underlying felonies, including arson as the predicate felony.  First, the language of § 844(h)(1) applies to all felonies.  It does not exclude arson.  Second, the subsection immediately following § 844(h), which is § 844(i), criminalizes arson and attempted arson.  It could be argued that Congress would have made some cross-reference in either § 844(h)(1) or § 844(i) if it intended arson to be excluded from the sentencing enhancement for "any felony."  It is also difficult to understand why Congress would intend for conspiracy to commit arson to be a permissible predicate offense for the ten-year enhancement for use of fire but not the actual act of arson.  Additionally, the legislative history of § 844(h)(1) at least suggests that arson to defraud an insurance company comes within the intended ambit of the "use of fire" enhancement.  In explaining the rationale for the enhancement, it is stated that "[f]ire is used extensively not only for the criminal purposes of

---

[32] Id.; see also id. n.11 ("Conspiracy to commit arson requires that two or more individuals plan to use fire in maliciously destroying or damaging a building used in interstate commerce . . . .  The actual use of fire is not a requirement of [18 U.S.C. § 844(i)].").

[33] 18 U.S.C. § 844(i) ("Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both. . . .")

[34] Riggio, 70 F.3d at 338 n.10.

extortion, terrorism and revenge, but to conceal other crimes such as homicide, and for fraud against insurance companies."[35]  On the other hand, it can be argued somewhat persuasively that Congress did not intend to authorize the enhancements in § 844(h) in addition to the minimum sentences set forth for convictions under § 844(i).  This would mean that neither arson nor conspiracy to commit arson could serve as predicate offenses under § 844(i).  But, our inquiry in this regard is foreclosed because this court's precedent indicates that congressional intent is, at a minimum, unclear.

We held in United States v. Corona that we agreed with the Seventh Circuit's assessment of § 844(h) with regard to arson.[36]  We saw "no indication from Congress that every arson should be subject to the [sentencing] enhancement set out in § 844(h)(1)."[37]  We nevertheless recognized that if sentences were imposed only for arson and the use of fire to commit conspiracy to commit arson, Congressional intent was clear that these consecutive punishments were permissible.[38]  But the defendant in Corona was convicted of and received separate sentences for arson, conspiracy to commit arson, and using fire to commit conspiracy to commit arson.[39]  We said that if the predicate offense for use of fire had been arson, rather than conspiracy to commit arson, there would have been an "obvious double jeopardy violation" because both arson

---

[35] H.R. REP. No. 97-678, as reprinted in 1982 U.S.C.C.A.N. 2631, 2632 (legislative history to the Anti-Arson Act of 1982, Pub.L. No. 97-298).

[36] 108 F.3d 565, 572 (5th Cir. 1997) (citing United States v. Chaney, 559 F.2d 1094, 1095-96 (7th Cir. 1977)).

[37] Id.; see also United States v. Konopka, 409 F.3d 837, 839 (7th Cir. 2005) (concluding that the "policy of section 844(h) is . . . embodied . . . in the arson statute, so that the government's position amounts to arguing that in enacting that section Congress intended to increase the sentence for arson by 10 years.  There is no indication of such intention.").

[38] Corona, 108 F.3d at 573.

[39] Id., at 567-68.

and use of fire to commit arson would punish for burning buildings with an effect on interstate commerce.[40]  However, the predicate offense was conspiracy to commit arson, and we implicitly, if not explicitly, observed that § 844(h) was inconclusive as to whether Congress intended to punish separately arson, conspiracy to commit arson, and use of fire to commit conspiracy to commit arson.  We accordingly applied the statutory construction rule in Blockburger and concluded that "[o]nce the jury has found the defendants guilty of arson and conspiracy to commit arson, it has found them guilty of using fire as part of that conspiracy,"[41] at least when the overt act of the conspiracy was setting a fire.  No other findings were necessary to establish the use-of-fire offense.  We held that "the government may choose to dismiss any of the three counts," but it could not seek convictions and sentences under all three.[42]  We expressly held that there could be "multiple punishments" for any combination of two of the three counts: (1) use of fire to commit conspiracy to commit arson under § 844(h)(1), and conspiracy to commit arson under 18 U.S.C. § 371; or (2) arson under § 844(i), and conspiracy to commit arson under § 371; or (3) arson under § 844(i), and use of fire to commit conspiracy to commit arson.[43]  In each of these combinations, one offense contained an element that the other did not.[44]  But when the third offense was added to the mix, that was no longer the case.

We applied a similar analysis in United States v. Smith, but the outcome was different due to the differing elements of each of the three offenses at

---

[40] Id. at 572.

[41] Id., at 573.

[42] Id. at 574.

[43] Id. at 574-75.

[44] Id. at 575.

issue.[45]   The defendant challenged her sentences for arson under § 844(i), conspiracy to commit arson and mail fraud under 18 U.S.C. § 371,[46] and use of fire to commit a conspiracy to commit mail fraud and arson under § 844(h)(1).[47] We held that each of these counts required proof of an element not required by the other two.[48]   Arson required use of fire to destroy a building or other property, conspiracy to commit arson required an agreement to use fire, and use of fire to commit mail fraud required that someone was defrauded through the mails.[49]   We observed, however, that if the use of fire count had been limited to use of fire to commit conspiracy to commit arson, and there had been an acquittal on the mail fraud count, there would have been a double jeopardy violation, as there had been in Corona.[50]   The sentences would have rested on arson, conspiracy to commit arson, and use of fire to commit conspiracy to commit arson.  The latter had no elements different from the combined elements of the other convictions when the overt act of the conspiracy was arson.

In Smith the defendant was also convicted of and sentenced for mail fraud.[51]   However, the defendant did not challenge that sentence, so our court

---

[45] 354 F.3d 390, 399-400 (5th Cir. 2003)

[46] Id. at 399.

[47] Id. at 399, 400 n.13.

[48] Id. at 399 ("Each of these offenses contains a unique fact not required by the other offense . . . .").

[49] Id.

[50] Id. at 400; see also id. at 400 n.14 ("We note, however, that the government took an unnecessary risk in combining the conspiracies into a single count, because there was the possibility that even a technical acquittal on the mail fraud count would leave it unable to proceed on the use-of-fire count, and we would be unable to determine whether the jury found fire was used in a conspiracy to commit mail fraud or, instead, in a conspiracy to commit arson.").

[51] See id. (noting that "the use-of-fire count is adequately supported by the felony of mail fraud, even if not by the conspiracy.").

18

had no occasion to consider whether sentences for arson, mail fraud, and use of fire to commit mail fraud violated the Double Jeopardy Clause, which is one of the combinations of sentences that Severns challenges.

From our precedent, several guideposts emerge. Congress has clearly expressed an intent to permit consecutive punishment for predicate offenses such as mail or wire fraud and use of fire to commit mail or wire fraud,[52] so there is no double jeopardy violation when those are the only offenses punished. It is unnecessary to perform a Blockburger analysis in reaching that conclusion. However, it is unclear whether Congress intended for the enhancement in § 844(h) to apply to every arson offense.[53] Accordingly, when sentences include punishment for arson and use of fire to commit a felony, the Blockburger test applies. Our precedent also tells us that there are combinations of punishment for arson and use of fire to commit a felony that pass the Blockburger test, including sentences for both arson and use of fire to commit conspiracy to commit arson.[54]

In the present case, Severns has been punished in two combinations that he contends fail the Blockburger inquiry: (1) arson, mail fraud, and use of fire to commit mail fraud, and (2) arson, wire fraud, and use of fire to commit wire fraud. The double jeopardy analysis regarding each of these sentence groupings is the same. We begin with mail fraud.

C

---

[52] 18 U.S.C. § 844(h) ("Whoever . . . uses fire . . . to commit any felony . . . shall, in addition to the punishment provided for such felony, be sentenced to imprisonment for 10 years. . . . [T]he term of imprisonment imposed under this subsection [shall not] run concurrently with any other term of imprisonment including that imposed for the felony in which the explosive was used or carried.").

[53] See Corona, 108 F.3d at 572.

[54] Id. at 574-75; United States v. Riggio, 70 F.3d 336, 338 (5th Cir. 1995).

One of the first questions we must answer is whether, in performing a Blockburger analysis, we compare the elements of arson in § 844(i) to the elements of the "us[ing] fire . . . to commit any felony" or instead, to the elements of "us[ing] fire . . . to commit" the specific predicate felony at issue, in this case, mail fraud. The differing approaches can lead to differing outcomes.

In applying Blockburger, the Fourth Circuit seems to have looked beyond the elements of the particular predicate offense actually charged and concluded that the arson offense described in § 844(i) does not punish the same conduct as the use of fire under § 844(h)(1).[55] Focusing "'on the elements of the crimes and not the similarity of the underlying facts,'"[56] that court reasoned that arson required proof of damage to a building by means of fire while "a 'use' of fire under § 844(h)(1) need not result in damage or destruction of property to violate the statute," citing a decision that involved intimidation by use of a burning cross.[57] The predicate offense for which the defendant in Martin was sentenced was mail fraud, not intimidation by use of a burning cross.[58] The Martin decision could be read as looking broadly, beyond the actual predicate offense, to "any felony," in comparing the elements of arson and use of fire.[59]

We conclude that Supreme Court precedent requires us to consider only the elements of use of fire and the particular predicate offense at issue rather than any possible use of fire to commit any conceivable felony. In Illinois v. Vitale,[60] the Supreme Court examined the analysis it had undertaken in Harris

---

[55] United States v. Martin, 523 F.3d 281, 292 (4th Cir. 2008).

[56] Id. (quoting United States v. LeMoure, 474 F.3d 37, 43 (1st Cir. 2007)).

[57] Id. (citing United States v. Wildes, 120 F.3d 468, 470 (4th Cir. 1997)).

[58] Id. at 287.

[59] Id. at 292.

[60] 447 U.S. 410, 420 (1980).

v. Oklahoma,[61] explaining that the felony-murder statute under consideration "on its face did not require proof of a robbery to establish felony murder; other felonies could underlie a felony-murder prosecution. But for the purposes of the Double Jeopardy Clause, we did not consider the crime generally described as felony murder as a separate offense distinct from its various elements."[62] Instead, the Court "treated a killing in the course of a robbery as itself a separate statutory offense."[63] Similarly, in Whalen v. United States, rape was one of six predicate offenses listed in a statute proscribing felony murder, and the Supreme Court held that it would consider the elements of rape in performing the Blockburger analysis, not the elements of robbery or kidnaping or arson, which were among the offenses listed as predicates for felony murder.[64]

D

Our court has held that the Blockburger "inquiry focuses on the statutory elements of the offenses, not on their application to the facts of the specific case before the court."[65] Our application of Blockburger in United States v. Corona[66] does not require a different methodology. As discussed above, the defendants in Corona received separate sentences for arson, conspiracy to commit arson, and using fire to commit conspiracy to commit arson,[67] and our court hypothesized a very unlikely means of using fire to commit conspiracy to commit arson (by

---

[61] 433 U.S. 682 (1977).

[62] Vitale, 447 U.S. at 420 (internal citation omitted).

[63] Id.

[64] 445 U.S. 684, 694 (1980).

[65] United States v. Singleton, 16 F.3d 1419, 1422 (5th Cir. 1994) (internal citation omitted).

[66] 108 F.3d 565 (5th Cir. 1997).

[67] Id. at 567.

using smoke signals or hanging a lantern in a belfry) in determining whether each offense required proof of an additional fact that the other two did not.[68] The Corona opinion concluded that although there was at least hypothetically a way in which punishment for each of the three offenses might pass the Blockburger test, when viewed realistically, it did not.[69] Accordingly, notwithstanding its hypothetical, the court concluded that sentences for arson under § 844(i), conspiracy to commit arson, and use of fire to commit conspiracy to commit arson in violation of § 844(h) punished the same conduct.[70] We are not convinced that smoke signals or hanging a lantern would actually be "use of fire" within the meaning of § 844(h), but in any event, courts must engage in realistic probabilities, not theoretical possibilities, in determining how statutes might be violated.[71] The smoke or lantern signal hypothesis in Corona is more of a theoretical possibility than a realistic probability. Moreover, how we apply Blockburger was explained in our decision in United States v. Singleton,[72] as recognized in Corona,[73] and even were there a conflict between the two opinions, which we do not suggest or resolve, Singleton is controlling as the earlier of the two decisions.

---

[68] Id. at 573-74.

[69] Id.

[70] Id.

[71] See generally James v. United States, 127 S. Ct. 1586, 1597 (2007) (explaining in a different but analogous context,"'[t]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime'" (quoting Gonzales v. Duenas-Alvarez, 127 S.Ct. 815, 822, (2007))).

[72] 16 F.3d 1419, 1422 (5th Cir. 1994) ("[T]he question is not whether this violation of § 2119 also constituted a violation of § 924(c), but whether all violations of the former constitute violations of the latter.").

[73] Corona, 108 F.3d at 572.

For these reasons, we limit our Blockburger inquiry to comparing the elements of arson in § 844(i) and mail fraud in § 1341, to the elements of use of fire to commit mail fraud, a violation of § 844(h)(1), rather than use of fire to commit any possible felony.

E

In applying Blockburger, we have held that if "there are more than two statutory provisions at issue, each offense must contain an element not contained in the sum of the elements of the other offenses."[74] We have explained that the inquiry entails determining whether all violations of one statute constitute a violation of the other.[75]

It is obvious that a conviction for arson does not necessarily establish mail fraud or use of fire to commit mail fraud. Arson requires no proof of intent to defraud or use of the mail. Nor does every use-of-fire-to-commit-mail-fraud violation necessarily establish arson, as that offense is described in § 844(i). There must be damage or an attempt to damage property in order to commit arson.[76] Property damage is not an element of § 844(h)(1). Under § 844(i), fire could be used intentionally to inflict personal injuries or death, without any harm to or attempt to harm property, and the mails could then be used in an effort to defraud an insurer or others to obtain benefits that would only be recoverable if the injuries or death were accidental. Examples that come to mind involve key-man or other life insurance or coverage obtained by professionals, such as surgeons, athletes or artists, to compensate for lost earnings or earning capacity due to an accidental injury.

---

[74] Id. (citing United States v. Davis, 793 F.2d 246, 248 (10th Cir. 1986)).

[75] Id.; see also United States v. Woodward, 469 U.S. 105, 107 (1985) (examining whether "every violation of the currency reporting statute necessarily entails a violation of the false statement law").

[76] See 18 U.S.C. § 844(i).

The more difficult question is whether convictions for both arson and mail fraud will always establish use of fire to commit mail fraud without proof of any additional fact. Tracking 18 U.S.C. § 1341, the Supreme Court has said that the elements of mail fraud are "use of the mails in furtherance of 'any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.'"[77] The elements of arson are that the defendant "(1) maliciously damaged or destroyed a building or personal property, (2) by means of fire, and (3) the building or personal property was being used in activity affecting interstate commerce."[78] Hewing to the principle that we consider the elements of the statutes, not the facts of any particular case, proof of both arson and mail fraud will not necessarily prove use of fire to commit mail fraud. The missing link is proof of the connection between the arson and mail fraud, that is, that fire was used to commit mail fraud.

We find support for this conclusion in decisions from at least two other circuit courts that have upheld sentencing a defendant for arson, mail fraud, and use of fire to commit mail fraud in the face of claims of double jeopardy violations.[79] In United States v. Patel, the First Circuit's ultimate holding was that the law was unclear regarding double jeopardy and the combination of sentences for arson, mail fraud, and using fire to commit mail fraud, and accordingly, there was no plain error.[80] But the court provided alternative reasons for its decision. It recognized that Congress clearly intended to punish cumulatively a predicate felony, other than arson, and using fire to commit that

---

[77] Cleveland v. United States, 531 U.S. 12, 15 (2000).

[78] United States v. Nguyen, 28 F.3d 477, 480 (5th Cir. 1994).

[79] United States v. Martin, 523 F.3d 281, 284 (4th Cir. 2008); United States v. Patel, 370 F.3d 108, 114 (1st Cir. 2004).

[80] Patel, 370 F.3d at 118.

24

predicate felony, which in Patel was mail fraud.[81]  The First Circuit then concluded that "[n]either the text nor the legislative history of the using fire statute reveals whether Congress intended it to apply where the defendant is also charged with arson," so that court proceeded with a Blockburger analysis.[82] The differences between arson and mail fraud were readily apparent.  With regard to the use of fire offense, the court concluded that "using fire to commit mail fraud requires proof that the defendant used the mails to further a scheme to defraud, which is not an element of arson."[83]

In Patel, the First Circuit examined our decision in Corona[84] at some length, distinguishing it on the basis that the defendant in Corona was punished for arson, conspiracy to commit arson, and using fire to commit conspiracy to commit arson, and Corona had concluded that "Congress did not intend the using fire statute to enhance the punishment for all arsons."[85]  "The Corona court determined that, where the act furthering the arson conspiracy is setting the fire underlying the arson, charging conspiracy as the predicate felony is just another way of charging arson as the predicate felony. . . .  The court declined to countenance this prosecutorial 'sleight of hand' to avoid the rule that a using fire conviction cannot be predicated on arson as the underlying felony."[86]  In distinguishing Corona from the convictions at issue in Patel, the First Circuit reiterated its conclusion that "to gain the use of fire conviction the government had to convince the jury of an additional element not required for either arson

---

[81] Id. at 115.

[82] Id. at 116.

[83] Id.

[84] 108 F.3d 565 (5th Cir. 1997).

[85] Patel, 370 F.3d at 116.

[86] Id. at 116-17 (internal footnote and citation omitted).

or mail fraud: Patel committed arson in order to commit the mail fraud. In other words, using fire to commit mail fraud required the government to connect the arson to the mail fraud."[87] We agree with this analysis of both Corona and the elements of use of fire to commit mail fraud.

The Fourth Circuit similarly held in United States v. Martin that separate, consecutive sentences for arson, mail fraud, and use of fire to commit mail fraud did not violate the Double Jeopardy Clause.[88] The Fourth Circuit first recognized, as we and Patel have done, that Congress expressly authorized separate punishment for mail fraud and use of fire to commit mail fraud.[89] The Fourth Circuit also concluded, as has our court, that the language of 18 U.S.C. § 844(h) and § 844(i) was "inconclusive" regarding cumulative punishment for arson and use of fire.[90] The Fourth Circuit applied Blockburger and decided that the arson offense described in § 844(i) does not punish the same conduct as the use of fire under § 844(h)(1).[91] The court focused "'on the elements of the crimes and not the similarity of the underlying facts.'"[92] It explained that arson required proof of damage to a building by means of fire while "a 'use' of fire under § 844(h)(1) need not result in damage or destruction of property to violate the statute," citing a decision that involved intimidation by use of a burning cross, as we have discussed above.[93] The Fourth Circuit distinguished our decision in Corona, and as an additional basis for its conclusion, the court quoted

---

[87] Id. at 117.

[88] 523 F.3d 281, 291-93 (4th Cir. 2008).

[89] Id. at 291.

[90] Id. at 292.

[91] Id.

[92] Id. (quoting United States v. LeMoure, 474 F.3d 37, 43 (1st Cir. 2007)).

[93] Id. (citing United States v. Wildes, 120 F.3d 468, 470 (4th Cir. 1997)).

26

and embraced Patel's rationale that "'using fire to commit mail fraud required the government to connect the arson to the mail fraud.'"[94]  Again, as already noted, we agree with this latter rationale.

Because proof of arson and mail fraud would not establish use of fire to commit mail fraud in every case, Severns may be sentenced for arson, mail fraud, and use of fire to commit mail fraud.  This analysis is equally applicable to Severns's convictions for arson, wire fraud, and use of fire to commit wire fraud.  However, as we explain below, the Government cannot maintain the two separate convictions and sentences for use of fire in the present case.

## VI

The final challenge to Severns's sentence is that because only one fire incident occurred, only one conviction can result under 18 U.S.C. § 844(h)(1).  Consequently, he contends, the Government must elect between the conviction for use of fire to commit mail fraud (Count 16) and use of fire to commit wire fraud (Count 17), and the district court erred in imposing two, consecutive ten-year sentences for these convictions.  Severns asserts that this court's precedent, including United States v. Walters[95] and United States v. Phipps,[96] construing and applying 18 U.S.C. § 924(c), regarding use of a firearm, support his position.  The Government states in its brief that this "argument may be well taken."  We agree.

The question is one of statutory construction, and our decisions regarding the sentencing enhancements under 18 U.S.C. § 924(c)(1) are instructive if not dispositive.  We have held that the "unit of prosecution" under § 924(c)(1) was

---

[94] Id. at 293.

[95] 351 F.3d 159, 171-72 (5th Cir. 2003).

[96] 319 F.3d 177, 184-89 (5th Cir. 2003).

a single use of a single firearm because § 924(c)(1) criminalized the "use, carriage, or possession of a firearm during and in relation to a predicate offense."[97] The text of 18 U.S.C. § 844(h)(1) is similar with respect to the unit of prosecution. That section criminalizes the "use[] [of] fire or an explosive to commit any felony which may be prosecuted in a court of the United States." In the present case, a fire occurred that damaged and destroyed Lone Star Gun's premises. Severns may be prosecuted and punished for use of fire to commit mail fraud or use of fire to commit wire fraud, but not both.

When, as in this case, the counts are multiplicitous, we remand for the Government to choose which count to retain.[98] The district court should then vacate the other conviction and resentence Severns.[99]

\*     \*     \*

We AFFIRM Severns's convictions on Counts 1–12 and 14–15, and his sentences on Counts 1–12, 14, and 15. Because only one sentence enhancement under § 844(h) may be imposed, we VACATE his sentences on Counts 16 and 17 and REMAND to the district court for resentencing after the Government elects which of the convictions on Counts 16-17 it will pursue. The district court should then vacate the conviction on the remaining count.

---

[97] Walters, 351 F.3d at 171 (quoting 18 U.S.C. § 924(c)(1), and discussing Phipps, 319 F.3d at 186).

[98] See United States v. Heath, 970 F.2d 1397, 1402 (5th Cir. 1992).

[99] Id.