# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

v.

BARBARA CORBY MARTIN, a/k/a
Barbara Balsley,
                    *Defendant-Appellant.*

No. 06-4876

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
Norman K. Moon, District Judge.
(3:05-cr-00028-nkm)

Argued: February 1, 2008

Decided: April 15, 2008

Before NIEMEYER, TRAXLER, and DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge Traxler wrote the opinion, in
which Judge Niemeyer and Judge Duncan joined.

## COUNSEL

**ARGUED:** John Edward Davidson, DAVIDSON & KITZMAN,
P.L.C., Charlottesville, Virginia, for Appellant. Jean Barrett Hudson,
OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville,
Virginia, for Appellee. **ON BRIEF:** John L. Brownlee, United States
Attorney, Roanoke, Virginia, for Appellee.

## OPINION

TRAXLER, Circuit Judge:

Barbara Corby Martin appeals her convictions and sentences for arson, *see* 18 U.S.C.A. § 844(i) (West 2000); using fire to commit mail fraud, *see* 18 U.S.C.A. § 844(h)(1) (West 2000); and mail fraud, *see* 18 U.S.C.A. § 1341 (West Supp. 2007). Martin argues that the evidence was insufficient to support the jury's conclusion that she caused the fire upon which her arson and using fire convictions were based, and she contends that the district court imposed multiple punishments for the same offense in violation of the Double Jeopardy Clause. As explained below, we affirm the jury's verdict and the sentence imposed by the district court.

I.

Because Martin challenges the sufficiency of the evidence to support her convictions, we summarize the evidence presented at trial, as well as the inferences flowing therefrom, in the light most favorable to the government. *See Glasser v. United States*, 315 U.S. 60, 80 (1942); *United States v. Burgos*, 94 F.3d 849, 857 (4th Cir. 1996) (en banc).

From 1998 through 2003, Martin owned and operated the Swissway Market, a small convenience store located in Scottsville, Virginia, that was damaged by a fire in October 2003. At the time of the fire, both Martin's business and her personal financial affairs were in significant distress.

In 2003, the Swissway Market operated at a net loss of approximately $165,487, fell in arrears on its lease (and was three months late at the time of the fire), routinely issued checks that were refused for insufficient funds, and lost check writing privileges on its Sam's Club account. Additionally, because of continuing overdraft problems, the Albemarle First Bank closed Swissway Market's business account. Within a few weeks of the fire, the Swissway Market lacked sufficient operating funds, rendering it unable to pay suppliers and vendors, stock its shelves, or compensate its employees. Heinz Gadi-

ent, who owned and leased the building to the Swissway Market, observed shortly before the fire that the freezer which was used to store meats and deli items was covered with butcher paper and closed off to the public.

Individually, Martin owed approximately $109,000 in unpaid state taxes at the time of the fire, including interest and penalties, as well as at least $17,000 in unpaid federal taxes. In the months leading up to the fire, Martin consulted David Way, a CPA, to help her negotiate with Virginia tax authorities regarding Virginia's tax amnesty date on November 3, 2003. Pursuant to this tax amnesty plan, Virginia forgave various penalties and liabilities if the debtor arranged to satisfy the debt before November 3. The fire, as it turned out, occurred about one week before the amnesty date.

There were numerous additional problems as well. Martin, having failed to pay her municipal business license fees or meal taxes for a number of years, was threatened with legal action in September 2003. Collectively, Martin and the Swissway Market owed $119,264 in debts over and above any available funds.

With her financial problems mounting, Martin explored selling the business and, a few months before the fire, located a potential buyer. Unfortunately, the sale of her business never came to fruition, and Martin openly expressed her dislike of the business and the town and her desire to "torch" the building "if she had the guts." J.A. 134. At one point, Martin hinted that "it's not going to be long and I'm not going to have to worry about any of it anyway." J.A. 135. About two weeks before the fire, in fact, Martin removed her computer from the store. Later, she told a friend that certain items of furniture had been removed from the store on the day before the fire.

On October 28, 2003, the day of the fire, Martin climbed into the store's loft, where various records, invoices and supplies were stored. The loft was accessible to Martin and her employees only by use of a free-standing ladder. Shortly before lunch, Swissway Market employee Gloria Poe held the ladder in place for Martin, who indicated she needed to get paper bags from the loft for the lunch crowd. When Martin climbed back down, however, she did not have any bags.

Several hours later, while employee Kimberly Martin was closing the store for the evening, Martin returned to the Swissway Market, which had never happened before while Kimberly was working, and indicated that she was looking for a document. Kimberly continued her close-of-business routine, unplugged the pizza ovens and other appliances, and cleaned and turned out the lights. When Kimberly left at 10:25 p.m., the power to the compressors and freezer was off, the loft door was closed, and the ladder used to access the loft had been returned to its place outside of the building. Martin was still on the premises along with her boyfriend, Tom Snoddy, who drove her to the store. Snoddy entered the store at some point but returned to the car to wait for Martin, who exited the store at approximately 10:30 p.m. Martin then told Snoddy she forgot to turn off the lights and returned by herself to the store for fifteen to twenty minutes. After she returned to the car, Snoddy drove around the building to inspect a security camera that he had installed; however, Martin became agitated and told Snoddy they had to leave immediately so she could search for a tax document at home.

At approximately 11:15 p.m., a passerby noticed a fire burning through the roof of the Swissway Market and called 911. When firefighters arrived at the scene fifteen minutes later, the fire was raging twenty feet above the roof line. Firefighters noticed that the door to the loft was partially open and that the ladder was back inside and positioned to provide access to the loft. Moreover, at some point that night, Martin called Dawn Detamore, a close friend, to tell her about the fire. During the conversation, Martin told Detamore that she had been in the loft that evening to search for some papers. In a subsequent conversation, however, Martin tried to convince Detamore that, in fact, Martin had said the opposite — that she "didn't go into the loft looking for the papers." J.A. 283.

Shortly after the fire, Martin filed a claim on a business owner's policy issued by Hanover Insurance Company that covered the contents of the Swissway Market and any income lost as a result of a covered event. Martin mailed the claim notice and Hanover, on November 7, 2003, issued Martin a check for $25,000. Martin later filed an official proof of claim, including her sworn statement that the "loss did not originate by any act, design or procurement on the part of the insured or this affiant." J.A. 38. The policy limit was $105,000,

and Martin expected to receive the balance of these proceeds at some point in the future.

Following the fire, Martin and Way discussed her using the insurance proceeds to resolve her tax liability with the Commonwealth of Virginia. Way, who was "expecting [that] there was going to be some money available," J.A. 76, tried to broker a deal whereby Virginia would accept a discounted amount in satisfaction of the entire $109,000 tax debt. Specifically, Way hoped Virginia would accept a lump sum payment of $80,000, the remainder of the insurance proceeds. Martin told Way that the initial $25,000 payment from Hanover was used to pay her employees' wages. In fact, Martin transferred $17,000 to her home equity line at Albemarle First Bank and $8,000 to Detamore, who then issued a check in approximately the same amount to Martin's mortgage company.

Agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") investigated the fire jointly with local officials. Special Agent Hine, who examined the scene within a week of the fire, testified as an expert on the subject of the cause and origin of fires. Agent Hine concluded from examining the remains of the building that the fire started in the loft area of the Swissway Market. He noted that there was very little fire damage to the contents in the lower part of the store; that any significant damage was caused by the upper portion of the structure collapsing and falling down; and that the soot and burn markings were far heavier in the upper part of the structure.

As for the cause of the fire, Agent Hine ultimately classified the fire as "incendiary," *i.e.*, one that was intentionally started. Although the cause of the fire was classified as "undetermined" when investigators first left the scene, this was merely an initial and preliminary classification. Agent Hine explained that, "[a]s a fire investigator, [I] want to try to get every piece of information [I] can from witnesses, from the fire scene, any forensic analysis that is done before [I] make a final determination." J.A. 338. Once the investigation was complete, Hine concluded that the cumulative facts demonstrated that someone set the fire intentionally: the loft door was open during the fire and the ladder was in place to provide access to loft, where the fire started; no ignitable liquids were stored in the loft that could have accidently ignited; an electrical engineer examined the scene, deter-

mined the power to the compressors and the lighting in the loft was off during the fire and ruled out an electrical cause; and Martin had been inside of the store mere moments before the fire was observed 20 feet above the roof line.

In December 2003, investigators interviewed Martin for the first time. Martin claimed that she had not been in the loft at the Swissway Market for two years and had not gone into the loft on the night of the fire either. She also suggested that she had experienced problems with the circuit breakers. Martin claimed that her business was improving and generally doing well, denied that she was experiencing financial problems and told agents that her tax problems with Virginia "had been resolved and . . . taken care of," J.A. 115, and that the IRS actually owed her a refund of $10,000. In March 2004, investigators conducted a follow-up interview during which Martin revealed new claims, most notably that Tom Snoddy stole her keys to the Swissway Market right before the fire.

In light of the evidence presented by the ATF investigators and Martin's clear financial motive to commit arson for the insurance proceeds,[1] a jury convicted Martin on all five counts charged in her indictment: malicious damage to a building by fire in violation of 18 U.S.C.A. § 844(i); using fire to commit another felony, namely mail fraud, in violation of 18 U.S.C.A. § 844(h); mail fraud in violation of 18 U.S.C.A. § 1341; and two counts of making a false material statement to ATF investigators (one count based on her assertion that she had not been in the loft and one count based on her claim that she was not experiencing financial problems), in contravention of 18 U.S.C.A. § 1001(a)(2) (West 2000 & Supp. 2007).

---

[1]The record contains evidence suggesting that the fire was not the result of arson. For example, Richard Chance, a fire scene investigator for insurance companies, appeared at trial on behalf of Martin and opined that he did not see any evidence of an incendiary origin; however, he acknowledged that he knew nothing about Martin's dire financial straits and admitted such information would have influenced his review of the evidence. Martin also presented expert testimony from an electrical engineer who indicated he could not rule out an accidental cause of the fire. Given that we must review the evidence in a light most favorable to the government, we need not dwell on this testimony.

Prior to sentencing, Martin moved to dismiss Count II of the indictment — that she used fire to commit the felony of mail fraud — arguing that the elements of this charge appear in Counts I (arson) and III (mail fraud). Martin contended that a sentence imposed for the conviction on Count II would essentially subject her to multiple punishments for conduct already being punished through her convictions on Counts I and III. The district court rejected this argument and imposed a sentence of 60 months each on Counts I and III, and 60 months each on Counts IV and V, all to run concurrently. On Count II, the district court concluded that it was required to impose a sentence of 120 months to run consecutively to the sentences imposed on all other counts.

## II.

Martin challenges the sufficiency of the evidence to support the jury's conclusion that she committed arson as charged in Count I or "used fire" as charged in Count II.[2] Under the standard of review established in *Glasser*, we must sustain the jury's verdict "if there is substantial evidence, taking the view most favorable to the Government, to support it." 315 U.S. at 80. We are prohibited from "overturn[ing] a substantially supported verdict merely because [we] . . . determine[ ] that another, reasonable verdict would be preferable. Rather, we shall reverse a verdict if the record demonstrates a lack of evidence from which a jury could find guilt beyond a reasonable doubt." *Burgos*, 94 F.3d at 862; *see United States v. Murphy*, 35 F.3d 143, 148 (4th Cir. 1994) (explaining that it is within the province of

---

[2]In the Statement of Issues set forth in her opening brief, Martin also purports to raise this evidentiary challenge as to her conviction on Count III for mail fraud. Martin's argument, however, is limited to whether the evidence was sufficient for the jury to conclude that Martin intentionally caused the fire, and she presents no sufficiency of the evidence challenge to the jury's conclusion that she committed mail fraud. Martin's argument was similarly circumscribed at oral argument. Accordingly, we need not address the sufficiency of the evidence as it concerns Martin's mail fraud conviction on Count III. *See United States v. Al-Hamdi*, 356 F.3d 564, 571 n.8 (4th Cir. 2004) ("It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned.").

the jury, not the appellate court, to "resolve[ ] any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe") (citation omitted). Accordingly, in the context of a challenge to the sufficiency of the evidence, our task as an appellate court is simply to determine whether, in light of the evidence presented at trial, "the jury could rationally have reached a verdict of guilt beyond a reasonable doubt." *United States v. Powell*, 469 U.S. 57, 67 (1984). Because we consider the evidence in the light most beneficial to the government, granting "the government the benefit of all reasonable inferences from the facts proven to those sought to be established," *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982), Martin must carry an imposing burden to successfully challenge the sufficiency of the evidence, *see United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997).

Both Count I (arson) and Count II (using fire to commit mail fraud) required the government to prove that Martin burned down the Swissway Market. The federal arson statute, set forth in 18 U.S.C.A. § 844(i), requires the government to prove "that the defendant: (1) maliciously; (2) damaged or destroyed a building, vehicle, or other real or personal property; (3) by means of fire or explosive; and (4) the building [or other] property was used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." *United States v. Gullett*, 75 F.3d 941, 947 (4th Cir. 1996).[3] The malice requirement imposed by § 844(i) "is satisfied if the defendant acted intentionally or with willful disregard of the likelihood that damage or injury would result from his or her acts." *Id.* at 948.

In section 844(h)(1), Congress directs that the punishment for any

---

[3]In relevant part, section 844(i) provides:

Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years . . . .

18 U.S.C.A. § 844(i).

other felony be enhanced if the government can prove that the defendant (1) "use[d] fire or an explosive" (2) "to commit [the] felony." 18 U.S.C.A. § 844(h)(1).[4] The "use" of fire covered by this provision is not limited to arson and encompasses, for example, the use of fire to intimidate or threaten another person. *See, e.g.*, *United States v. Wildes*, 120 F.3d 468, 470 (4th Cir. 1997) ("Unquestionably, setting fire to a wooden cross as a means of intimidation constitutes the use of fire . . . within the plain meaning of § 844(h)(1).").

Here, of course, the government's evidence that Martin "used fire" and committed arson was the same. Martin contends that this evidence failed to prove a causal link between her and the fire. Because the government did not present the type of forensic evidence that in and of itself suggests arson, such as building materials with trace amounts of liquid accelerants, Martin complains that the government failed to adduce any evidence that the fire was the result of arson as opposed to an accidental source, such as faulty wiring. Therefore, Martin contends that the jury convicted her solely on the insufficient evidentiary basis of her motive to torch the building and her presence at the building near the time of the fire. *See United States v. Yoakam*, 116 F.3d 1346, 1350 (10th Cir. 1997) (concluding that even if the government had proven defendant had a motive to commit arson, evidence was insufficient where defendant's only link to arson was testimony that "he was the last one out of the building, just moments behind his employees").

---

[4]Section 844(h)(1) provides:

(h) Whoever—

(1) uses fire or an explosive to commit any felony which may be prosecuted in a court of the United States, . . . shall, in addition to the punishment provided for such felony, be sentenced to imprisonment for 10 years. . . . Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the felony in which the explosive was used or carried.

18 U.S.C.A. § 844(h)(1).

Martin's primary complaint is that there is no direct evidence that she caused the fire. As we have observed repeatedly, "circumstantial evidence is not inherently less valuable or less probative than direct evidence" and may alone support a guilty verdict. *United States v. Williams*, 445 F.3d 724, 731 (4th Cir. 2006); *see Holland v. United States*, 348 U.S. 121, 140 (1954). And this is no less true in the context of arson. When the government offers evidence of the defendant's "motives to set the fire, his plan and preparation to do so, his opportunity to carry out the plan and evidence that [the fire did not occur] accidentally," direct evidence of arson is not necessary to sustain a conviction under § 844(i). *United States v. Lundy*, 809 F.2d 392, 396 (7th Cir. 1987); *see United States v. Schnapp*, 322 F.3d 564, 572-73 (8th Cir. 2003).

As our recitation of the evidence makes abundantly clear, there is plenty of strong circumstantial evidence that would permit a reasonable jury to conclude that Martin intentionally set the building ablaze. In addition to the overwhelming evidence of Martin's financial motive to cause the fire, there was substantial circumstantial evidence, unrelated to motive, establishing that Martin ignited the fire. First, there was Martin's opportunity to set the fire and her proximity to the fire when it began. Martin was alone in the store mere minutes before the fire was seen by a passerby. Moreover, the evidence suggested that Martin waited until her employees clocked out for the evening, then retrieved the access ladder from outside of her store, opened the door to the loft and climbed into the loft — where the fire originated — minutes before the fire was seen. Second, Martin lied to investigators about her presence in the loft, claiming it had been two years since her last visit, and she suggested to her friend Detamore that Detamore should not disclose that Martin had been in the loft on the night of the fire. Third, the government presented expert testimony that the fire had not been electrical in origin, that the weather did not play a factor, and that there was no indication of another accidental cause, such as the presence of flammable liquids stored in the loft.

Viewing the evidence as a whole, we conclude that it was more than sufficient to support Martin's convictions. *See Lundy*, 809 F.2d at 396 (concluding that evidence of arson was sufficient where the defendant had motive and was alone in the store shortly before the

fire, and where there was evidence that the fire was not an accident). We therefore affirm the jury's verdict on Count I and Count II.

### III.

Martin next challenges her sentences for her convictions on Counts I, II and III under the Double Jeopardy Clause of the Fifth Amendment.[5] Martin argues that because she was sentenced both for committing arson, *i.e.*, "maliciously damag[ing] . . . by means of fire . . [a] building," 18 U.S.C.A. § 844(i), *and* for mail fraud, her separate sentence for using fire to commit mail fraud in violation of § 844(h)(1) amounted to multiple punishments for a single course of criminal activity.

The constitutional guaranty established by "the Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Halper*, 490 U.S. 435, 440 (1989); *see United States v. Bowe*, 309 F.3d 234, 238 (4th Cir. 2002). The question here implicates only one of these double jeopardy protections — the prohibition against "cumulative *punishments* for the same offense in a single criminal trial." *United States v. Goodine*, 400 F.3d 202, 206 (4th Cir. 2005) (internal quotation marks omitted). "[I]n the multiple punishments context, th[e] interest" protected by the Double Jeopardy Clause "is limited to ensuring that the total punishment did not exceed that authorized by the legislature." *Jones v. Thomas*, 491 U.S. 376, 381 (1989) (internal quotation marks omitted). The double jeopardy protections provided by the Fifth Amendment "serve[ ] principally as a restraint on courts and prosecutors. The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense . . . ." *Brown v. Ohio*, 432 U.S. 161, 165 (1977); *cf. United States v. Handford*, 39 F.3d 731, 735 (7th Cir. 1994) ("At the root of the limited impact of the Double Jeopardy Clause on the legislature is the principle that the

---

[5]The Double Jeopardy Clause protects "any person [from] be[ing] subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

power to define criminal offenses and prescribe punishments imposed upon those found guilty of them belongs solely to the legislature.").

Thus, the guarantee against multiple punishments serves simply to ensure that the defendant's sentence is authorized by Congress. If the punishment is authorized by statute, there can be no double jeopardy violation. *See Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983); *see also United States v. Chandia*, 514 F.3d 365, 2008 WL 186180 at *3 (4th Cir. Jan. 23, 2008) ("When a single course of conduct violates multiple statutes, multiple punishments may be imposed without violating the Double Jeopardy Clause, if that is what Congress intended."). In the end, "[o]ur only task is to determine whether Congress intended to impose multiple punishments." *Chandia*, ___ F.3d at ___.

As in any case requiring us to sort out congressional intent, we begin with the statutory text itself. *See Albernaz v. United States*, 450 U.S. 333, 336 (1981). "Congress ordinarily does not intend to punish the same offense under two different statutes. Accordingly, where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent." *Whalen v. United States*, 445 U.S. 684, 692 (1980). Of course, if the statutory language allows multiple punishments, then there is no double jeopardy problem and we need not go any further. *See Hunter*, 459 U.S. at 368-69 ("Where . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct . . . , a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.").

If, however, the statute provides no definitive indication of congressional intent, we apply the rule of statutory construction prescribed by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299 (1932). Under *Blockburger*, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." 284 U.S. 299, 304 (1932). If the elements of each criminal statute "do not overlap, then multiple punishments are pre-

sumed to be authorized." *United States v. Terry*, 86 F.3d 353, 356 (4th Cir. 1996).

It is unnecessary for us to resort to the *Blockburger* test to determine whether Congress authorized cumulative punishments for Martin's mail fraud conviction and her conviction for use of fire to commit mail fraud. Under section 844(h)(1), Congress clearly contemplated that the use of fire to commit a felony would enhance the defendant's punishment for the predicate felony:

> Whoever . . . uses fire . . . to commit any felony . . . shall, *in addition to the punishment provided for such felony*, be sentenced to imprisonment for 10 years. . . . [T]he term of imprisonment imposed under this subsection [shall not] run *concurrently* with any other term of imprisonment.

18 U.S.C.A. § 844(h)(1) (emphasis added); *see United States v. Patel*, 370 F.3d 108, 115 (1st Cir. 2004) ("The statute plainly provides that a defendant who uses fire in the commission of a federal felony will be punished cumulatively for the predicate felony *and* for using fire to commit that felony." (emphasis in original)). Martin wisely concedes this point, as she must, acknowledging that "Congress did intend to add a second consecutive punishment for violating 18 U.S.C. § 844(h) in addition to the mail fraud in violation of 18 U.S.C. § 1341, because it said so." Br. of Appellant at 26; *see Patel*, 370 F.3d at 115 ("Because Congress explicitly authorized cumulative punishments for the predicate felony and using fire to commit the predicate felony, there was no Double Jeopardy violation in sentencing [the defendant] for both mail fraud and using fire to commit mail fraud . . . ."). Moreover, Martin does not suggest that the sentences imposed for mail fraud and arson, which are wholly separate offenses, create double jeopardy concerns either. *See Patel*, 370 F.3d at 116 n.6. Essentially, then, Martin acknowledges that there would have been no double jeopardy violation had she been sentenced for either (1) mail fraud and using fire to commit mail fraud *or* (2) mail fraud and arson.

In Martin's view, the problem exists because the government charged her, based on the same course of conduct, with both *arson and using fire* to commit mail fraud. Martin contends that to discern whether cumulative punishment under *all three statutes* is permissi-

ble, we must compare the *combined* elements of the arson and mail fraud offenses on the one hand with the elements of the using fire to commit a felony offense on the other. According to Martin, she was sentenced twice for the same offense because she received sentences on the arson count and the mail fraud count, and then she received another sentence for essentially those two offenses combined into the single offense of using fire to commit mail fraud. We disagree.

Martin's position is fundamentally flawed in that it assumes that § 844(i) (arson) and § 844(h)(1) ("us[ing] fire") punish the same conduct. Because an examination of the statutory language is inconclusive, we must apply *Blockburger* to determine if these offenses are "the same" for double jeopardy purposes. The fact that the same act is being punished under both statutes is not important here because "under the *Blockburger* test, whether two offenses are the same depends on the elements of the crimes and not the similarity of the underlying facts." *United States v. LeMoure*, 474 F.3d 37, 43 (1st Cir. 2007). The federal arson statute requires the government to prove that the defendant "maliciously damage[d]" a "building" by "means of fire." 18 U.S.C.A. § 844(i). The "malicious damage" element in the arson statute is not an element of proof in the using fire statute. Indeed, a "use" of fire under § 844(h)(1) need not result in damage or destruction of property to violate the statute. *See Wildes*, 120 F.3d at 470 (holding that defendant used fire by lighting "a wooden cross as a means of intimidation"). By contrast, § 844(h)(1) requires proof that a defendant used fire to commit a felony — in this case, mail fraud. Section 844(h)(1) incorporates the elements of the predicate mail fraud felony, which in turn requires proof of the existence of a scheme to defraud as well as the defendant's use of the mails to further the scheme. *See United States v. Vinyard*, 266 F.3d 320, 326 (4th Cir. 2001). The arson statute does not include either of these elements.

In a substantially similar case, the First Circuit reached the same conclusion, providing this sound analysis:

> [T]here is no Double Jeopardy bar to imposing multiple punishments for arson and using fire to commit mail fraud because these are separate offenses under *Blockburger*. Arson requires proof that a defendant, through the use of

fire, damaged "a building . . . used in interstate commerce." 18 U.S.C. § 844(i). Using fire to commit mail fraud requires proof that the defendant used the mails to further a scheme to defraud. *See* 18 U.S.C. § 1341. Thus, arson requires proof that *fire damaged a building*, which is not an element of using fire to commit mail fraud. And using fire to commit mail fraud requires proof that the defendant *used the mails to further a scheme to defraud*, which is not an element of arson.

*Patel*, 370 F.3d at 116 (emphasis in original).

Relying on *United States v. Corona*, 108 F.3d 565 (5th Cir. 1997), Martin contends that because she was convicted of three offenses, *Blockburger* requires that each offense contain an element not found in either of the other offenses. Assuming for the sake of analysis that Martin is correct that each statutory provision must contain an element unique to it and not contained in the other provisions, we would still reach the same conclusion. The First Circuit addressed precisely this issue in precisely this context, concluding that all three offenses were separate offenses even under Martin's suggested approach:

Arson required proof that [the defendant] set fire to a building; mail fraud required proof that [the defendant] used the mails to further a scheme to defraud; and using fire to commit a felony required proof that [the defendant] used fire to commit mail fraud. Thus, to gain the use of fire conviction the government had to convince the jury of an additional element not required for either arson or mail fraud: [the defendant] committed arson *in order to* commit the mail fraud. In other words, using fire to commit mail fraud required the government to connect the arson to the mail fraud. The statutory elements of arson and mail fraud can be met in a single prosecution without the government connecting the two crimes. Therefore, using fire to commit mail fraud has an additional element which makes it a separate offense from the combination of arson and mail fraud.

*Patel*, 370 F.3d at 117.

We agree with the reasoning and result in *Patel* that the offense of using fire to commit a felony includes an element of proof not required in the crimes of arson or mail fraud. We conclude, therefore, that the offenses charged in Counts I, II and III are separate offenses under *Blockburger* and that Martin was not sentenced more than one time for the same offense.[6]

## IV.

For the reasons set forth above, we affirm Martin's convictions and sentences.

*AFFIRMED*

---

[6]We also reject Martin's argument that the district court erroneously imposed her 10-year sentence under § 844(h) to run consecutively to her sentence for the arson conviction because the statute refers only to felonies involving explosives. *See* 18 U.S.C.A. § 844(h) ("[N]or shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the felony in which the explosive was used or carried."). Martin's argument is foreclosed by circuit precedent. *See United States v. Ramey*, 24 F.3d 602, 610 (4th Cir. 1994), *abrogated on other grounds*, *Jones v. United States*, 529 U.S. 848 (2000).