**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 10-4514**

─────────────

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

WILLIAM WARDELL WELEBIR, a/k/a Cosmo, a/k/a William Wardell
Webelir, a/k/a Cozmo,

Defendant – Appellant.

─────────────

**No. 10-5203**

─────────────

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

WILLIAM WARDELL WELEBIR, a/k/a Cosmo, a/k/a William Wardell
Webelir, a/k/a Cozmo,

Defendant – Appellant.

─────────────

Appeals from the United States District Court for the Western
District of Virginia, at Harrisonburg.   Samuel  G.  Wilson,
District Judge. (5:09-cr-00019-sgw-1)

─────────────

Submitted:  April 21, 2011            Decided:  June 2, 2011

─────────────

Before DAVIS, KEENAN, and DIAZ, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

Larry W. Shelton, Federal Public Defender, Andrea L. Harris, Assistant Federal Public Defender, Christine Madeleine Lee, Research and Writing Attorney, Charlottesville, Virginia, for Appellant. Timothy J. Heaphy, United States Attorney, Joseph W.H. Mott, Assistant United States Attorney, Peter Luccarelli, Third Year Law Student, Katherine L. Brings, Third Year Law Intern, Roanoke, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

William Wardell Welebir appeals his conviction after a jury trial for maliciously damaging and destroying by means of fire a property used in interstate commerce, in violation of 18 U.S.C. §§ 2, 844(i) (2006), and the district court's imposition of restitution in the amount of $25,600. We affirm.

Welebir claims that the district court erred in denying his Fed. R. Crim. P. 29 motion for judgment of acquittal on the basis of insufficient evidence. Rule 29 provides that a district court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). We review de novo the district court's denial of a Rule 29 motion, determining whether, viewing the evidence in the light most favorable to the government, it is supported by substantial evidence. United States v. Hickman, 626 F.3d 756, 762-63 (4th Cir. 2010). "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Young, 609 F.3d 348, 355 (4th Cir. 2010) (internal quotation marks and alteration omitted).

In reviewing for substantial evidence, this court considers both circumstantial and direct evidence and allows the government all reasonable inferences from the facts shown to

3

those sought to be established. United States v. Harvey, 532 F.3d 326, 333 (4th Cir. 2008). This court does not weigh the evidence or review the credibility of witnesses. United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997). Rather, these functions are reserved for the jury. Id. "Reversal for insufficient evidence is reserved for the rare case where the prosecution's failure is clear." United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (internal quotation marks omitted).

To sustain a conviction for arson under 18 U.S.C. § 844(i), the government must prove that the defendant "(1) maliciously; (2) damaged or destroyed a building . . . or other real or personal property; (3) by means of fire . . .; and (4) the building . . . or personal or real property was used in interstate . . . commerce or in any activity affecting interstate . . . commerce." United States v. Gullett, 75 F.3d 941, 947 (4th Cir. 1996). The Government asserts that the evidence is sufficient to support Welebir's conviction as either a principal or an aider and abettor.

"Aiders and abettors are liable to the same extent as the principal." United States v. Akinkoye, 185 F.3d 192, 201 (4th Cir. 1999). A defendant is guilty of aiding and abetting if he has "knowingly associated himself with and participated in the criminal venture." United States v. Kingrea, 573 F.3d 186,

4

197 (4th Cir. 2009) (internal quotation marks omitted). To prove the element of association, the government must show that the defendant "shared in the principals' criminal intent. This requires evidence that the defendant be aware of the principals' criminal intent and the unlawful nature of their acts." Id. (internal quotation marks omitted). However, when a defendant is convicted of a crime based on alternative theories and the government produces sufficient evidence to convict on one theory, we need not consider whether the evidence is sufficient on the alternative ground. United States v. Ealy, 363 F.3d 292, 298 (4th Cir. 2004).

Welebir was convicted of maliciously damaging and destroying by means of fire the building housing Bad Water Bill's Barbeque Barn, a Strasburg, Virginia restaurant. On appeal, Welebir does not contest that the building housing Bad Water Bill's was destroyed in an intentional arson and that the restaurant was used in or affected interstate commerce. Rather, he contends only that the evidence is insufficient to show his participation in the arson as a principal or an aider and abettor. We conclude that, when the evidence is viewed in the light most favorable to the Government, a reasonable jury could find the Government proved that Welebir participated in the arson of Bad Water Bill's as a principal.

The evidence, including Welebir's own statements to investigators, places Welebir across the street from Bad Water Bill's at a gas station at approximately 2:26 AM on October 25, 2003, and leaving the restaurant's lot approximately five to seven minutes before the fire was first reported at 2:49 AM. The fire started after a liquid fuel was poured in the vicinity of the restaurant's basement door, and all accidental ignition sources in the basement were eliminated as causes of the fire.

The evidence also showed that the arson of Bad Water Bill's took place amidst an atmosphere of animosity and following violent confrontations between two national motorcycle gangs, the Hell's Angels and the Pagans, both so-called "outlaw" motorcycle gangs that engage in criminal activity. Bad Water Bill's was scheduled to host a motorcycle show later in the day on October 25. The motorcycle show was to feature the Titans, a smaller motorcycle gang that supported and was aligned with the Hell's Angels. The Pagans considered Bad Water Bill's as located within their "territory" and sought to maintain that territory from being infiltrated by the Hell's Angels or any other motorcycle gangs aligned with them.

Welebir was not a member of any of these motorcycle gangs. Although interested in becoming a member of the Pagans, Welebir was only a "hang around," an individual who could attend

6

some Pagan events but was not a full or even prospective member of the gang. The evidence established that it was not uncommon for motorcycle gangs such as the Pagans to use hang arounds to commit criminal acts on behalf of the gang. Using a hang around would allow the gang to benefit from any criminal acts performed while maintaining a "separation" between the act and the gang. Welebir was also friends with Paul Hampton, the president of the northern Virginia chapter of the Pagans in 2003. Hampton would use nonmembers to commit criminal acts—otherwise known as "taking care of business"—on the gang's behalf. To become a member of the northern Virginia chapter, a person would need Hampton's "okay."

Although no witness testified to observing Welebir set the Bad Water Bill's fire, Welebir's own statements establish that he knew Hampton had been instructed by his superiors in the Pagans' mother club to "take care of business" and "send a message" to the Titans that they were supporting the wrong motorcycle gang. Welebir wanted to become a member of the Pagans but would need Hampton's approval to do so. Although Welebir denied setting the fire, he lied to investigators about having been present at the restaurant lot. From Welebir's motive, his presence in the vicinity of the restaurant near the time of the fire, the readily available means for starting the fire, his inculpatory statements, and his inconsistent

7

statements to law enforcement, a reasonable jury could have concluded that Welebir committed the arson. Although largely circumstantial, this evidence was sufficient to convict Welebir. See United States v. Martin, 523 F.3d 281, 289 (4th Cir. 2008) (finding that circumstantial evidence permitted a reasonable jury to conclude that defendant intentionally set a building on fire where there was evidence that the fire was intentionally set and evidence of defendant's financial motive to cause the fire, opportunity to set the fire, presence in the building mere minutes before the fire, and lies to investigators). Consequently, Welebir's challenge to the sufficiency of the evidence fails.[*]

With respect to the district court's order of restitution, Welebir claims that the court abused its discretion in ordering restitution outside of the ninety-day deadline for

---

[*] Because the evidence is sufficient to show Welebir's participation in the arson as a principal, we need not consider whether it is sufficient to show his participation as an aider and abettor. Ealy, 363 F.3d at 298. Nevertheless, we readily conclude that the evidence is sufficient to support Welebir's conviction as an aider and abettor, as it established his knowing association with and participation in a criminal venture. Welebir was aware that Hampton had been instructed to "take care of business" and send a message to the Titans. A rational juror could have concluded that he shared in Hampton's criminal intent—Welebir drove to the restaurant lot knowing that the arson would take place and took Hampton along to ensure that the fire had been set. And Welebir had a motive to participate, given his desire to join the Pagans and the need to receive Hampton's approval before becoming a member.

doing so prescribed by the Mandatory Victims Restitution Act of 1996 ("MVRA"), Pub. L. No. 104-132, §§ 201-11, 110 Stat. 1214, 1227-41 (codified in relevant part at 18 U.S.C. §§ 3663A, 3664 (2006)).  We review orders of restitution for abuse of discretion.  See United States v. Llamas, 599 F.3d 381, 391 (4th Cir. 2010).  A district court abuses its discretion when it "acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law."  United States v. Delfino, 510 F.3d 468, 470 (4th Cir. 2007).

The MVRA directs a sentencing court, when sentencing a defendant convicted of certain categories of offenses, including "an offense against property," to order "that the defendant make restitution to the victim of the offense."  18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii).  Disputes as to the "proper amount" of restitution are to be resolved by the court by a preponderance of the evidence, and the government bears the burden of demonstrating the "amount of the loss sustained by a victim as a result of the offense."  18 U.S.C. § 3664(e).  If the victim's losses are "not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's

9

losses, not to exceed 90 days after sentencing." 18 U.S.C. § 3664(d)(5).

"[A] sentencing court that misses the 90-day deadline [,however,] nonetheless retains the power to order restitution[] at least where . . . the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount." Dolan v. United States, 130 S. Ct. 2533, 2536 (2010). The ninety-day time limit is the type of requirement that "seeks speed by creating a time-related directive that is legally enforceable but does not deprive a [district court] . . . of the power to take the action." Id. at 2538-39. "The fact that a sentencing court misses the [MVRA's] 90-day deadline, even through its own fault or that of the Government, does not deprive the court of the power to order restitution." Id. at 2539.

In this case, it is undisputed that the district court missed the MVRA's ninety-day deadline, ordering restitution on October 25, 2010, 173 days after the May 5, 2010 sentencing hearing. In imposing judgment at the May 5 hearing, however, the district court specifically ordered that Welebir pay restitution to Bad Water Bill's owner Mary Fisher, leaving undecided for more than ninety days only the amount of restitution. We therefore reject Welebir's argument that the district court erred in denying his motion to dismiss the

10

restitution request because the MVRA required a hearing on that request within ninety days after sentencing. See id. at 2536.

Welebir also claims that the district court erred in ordering restitution in this case because the Government did not notify him of its amended request for restitution within ninety days after sentencing. We reject this argument as well. Although the district court necessarily could not rule on the propriety of the Government's amended request in a timely manner, this did not deprive the court of the power to order a restitution amount. Id. at 2539. Further, Welebir was able to challenge the amended restitution request at the October 25 hearing and has not asserted that he was harmed by the district court's failure to comply with the ninety-day deadline. Accordingly, we discern no abuse of discretion in the district court's order of restitution.

We therefore affirm the district court's amended judgment of conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

11