An appropriate Order will issue.

**UNITED STATES of America,**

v.

**Ahmed Muse SALAD, Abukar Osman Beyle, and Shani Nurani Sheikh Abrar, Defendants.**

**Criminal No. 2:11cr34.**

United States District Court, E.D. Virginia, Norfolk Division.

Nov. 27, 2012.

Benjamin Lucas Hatch, Joseph E. Depadilla, United States Attorney's Office, Norfolk, VA, Brian J. Samuels, United States Attorney Office, Newport News, VA, for United States of America.

Larry Mark Dash, Office of the Federal Public Defender, Norfolk, VA, Paul Geoffrey Gill, Office of the Federal Public Defender, Richmond, VA, Lawrence Hunter Woodward, Jr., Shuttleworth Ruloff Swain Haddad & Morecock PC, Virginia Beach, VA, Stephen Ashton Hudgins, Stephen A. Hudgins PC, Poquoson, VA, for Defendants.

### MEMORANDUM ORDER

REBECCA BEACH SMITH, Chief Judge.

This matter comes before the court upon the Defendants' Joint Motion to Dismiss Counts 7, 8, 9, and 10 and Memorandum in Support ("Motion"), ECF No. 501, filed on September 17, 2012. The United States opposed the Motion in its Consolidated Response ("Response"), filed on October 17, 2012. The Defendants filed a Reply ("Reply"), ECF No. 530, on November 1, 2012, and the matter is now ripe for review.

## I. MOTION, RESPONSE, AND REPLY

The Defendants seek dismissal of Counts 7–10 ("Kidnapping Counts") of the Superseding Indictment. In support of their Motion, the Defendants argue that the Kidnapping Counts are multiplicitous with Counts 2–5 ("Hostage Taking Counts") and that they should, therefore, be dismissed. Mot. at 5–10. The Defendants argue that the Kidnapping Counts and the Hostage Taking Counts require proof of the same elements, other than the jurisdictional elements, which would require dismissal of the Kidnapping Counts. *Id.* The Defendants contend that jurisdictional elements should not be considered for purposes of double jeopardy. *Id.* at 9–10; Reply at 4. The United States opposes the Motion, asserting that the substantive elements and jurisdictional elements— which it argues the court should consider—are different. Resp. at 120–28. Additionally, the United States argues that the Defendants' multiplicity argument will not be ripe until the conclusion of the guilt/innocence phase, assuming the Defendants are convicted of both sets of counts. *Id.* at 119–20.

## II. LEGAL STANDARDS

 Under the Double Jeopardy Clause of the Fifth Amendment, "[no person shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Among other protections, the Double Jeopardy Clause prevents "the imposition of cumulative punish-

ments for the same offense in a criminal trial." *United States v. Goodine*, 400 F.3d 202, 206 (4th Cir.2005) (quoting *United States v. Ragins*, 840 F.2d 1184, 1187 (4th Cir.1988)). Congress is free "to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense." *United States v. Martin*, 523 F.3d 281, 290 (4th Cir.2008) (citing *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)). It is the court's role to determine whether Congress intends to impose multiple punishments when a single course of conduct violates multiple statutes. *Id.* (citing *United States v. Chandia*, 514 F.3d 365, 371–72 (4th Cir.2008)).

 Because "Congress ordinarily does not intend to punish the same offense under two different statutes ... where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent." *Id.* at 290. To determine whether Congress intends to impose multiple punishments, courts must first look to the statutory text. *Id.* If the statutory text does not provide a definitive indication of Congress's intent, the court must determine whether "each provision requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). "If the elements of each criminal statute 'do not overlap, then multiple punishments are presumed to be authorized.'" *Martin*, 523 F.3d at 291 (quoting *United States v. Terry*, 86 F.3d 353, 356 (4th Cir.1996)). Lesser included offenses are the same as their greater offenses for

purposes of double jeopardy such that multiple punishments are not authorized. *Martin v. Taylor*, 857 F.2d 958, 959–60 (4th Cir.1988) (citing *Brown*, 432 U.S. at 165, 97 S.Ct. 2221).

 When examining two statutes under *Blockburger*, the court must consider only the elements of the statutes and not the facts of the underlying case. *United States v. Ayala*, 601 F.3d 256, 264–65 (4th Cir.2010) *cert. denied*, —— U.S. ——, 131 S.Ct. 262, 178 L.Ed.2d 173 (2010) (quoting *United States v. Allen*, 13 F.3d 105, 109 n. 4 (4th Cir.1993)). Overall, this question of multiplicity turns on legislative intent and is "based upon '[t]he language, structure, and. legislative, history' of the statute." *United States v. NJB*, 104 F.3d 630, 633 (4th Cir.1997) (quoting *Garrett v. United States*, 471 U.S. 773, 779, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985)).

## III. ANALYSIS

Few courts have considered whether an act that simultaneously violates the Kidnapping Statute and the Hostage Taking Statute may be punished cumulatively. In *United States v. Angeles*, 484 Fed.Appx. 27 (6th Cir.2012), the Sixth Circuit issued an unpublished opinion in which it found no double jeopardy problem because kidnapping and hostage taking each required proof of a fact the other did not. *Id.* at 32–33.[1] Another court similarly found no multiplicity because a kidnapping charge requires transportation of the victim in interstate commerce. *Pham v. United States*, No. CIV 99–4450 GEB, 2007 WL 542378, at *12 (D.N.J. Feb. 16, 2007). In a different context, the Fifth Circuit has distinguished these provisions by analyzing

---

1. Notably, however, the only requirement of proof that the court found in kidnapping that was not also present in hostage taking was a jurisdictional element. *See id.* This court is essentially in agreement with the finding in *Angeles* as to the substantive elements of these crimes, but disagrees as to the treatment of the jurisdictional elements. *See infra* Sections III.A. and B.

the jurisdictional elements. *United States v. Carrion–Caliz*, 944 F.2d 220, 223–24 (5th Cir.1991). The analysis is thus broken into a discussion of substantive and jurisdictional elements.

### A. Substantive Elements

The parties dispute whether the substantive elements of 18 U.S.C. § 1201 ("Kidnapping Statute") and 18 U.S.C. § 1203 ("Hostage Taking Statute") are the same for purposes of double jeopardy. Mot. at 5–10; Resp. at 120–28.

■ The Kidnapping Statute provides that:

> Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person ... shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

18 U.S.C. § 1201. Thus, the Fourth Circuit has held the essential elements of kidnapping to be "unlawful seizure and holding." *United States v. Lewis*, 662 F.2d 1087, 1088 (4th Cir.1981) (citing *United States v. Young*, 512 F.2d 321, 323 (4th Cir.1975)).

■ The Hostage Taking Statute provides that:

> [W]hoever, whether inside or outside the United States, seizes or detains and threatens to kill, to injure, or to continue to detain another person in order to compel a third person or a governmental organization to do or abstain from doing any act as an explicit or implicit condition for the release of the person detained, or attempts or conspires to do so, shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

18 U.S.C. § 1203. That is, the substantive elements of hostage taking include 1) seizure or detention of another person; 2) a threat to kill, to injure, or to continue to detain; and 3) the purpose to compel a third person or a governmental organization to do or abstain from doing any act. *See id.*

The statutory text, though similar, gives no definitive answer to the question of whether Congress intended these offenses to be punished cumulatively when they overlap jurisdictionally. Nor is there anything in the statutory text to suggest Congress did not intend these crimes to be punished cumulatively. Because the statutory text does not resolve this issue, the court turns to *Blockburger* to determine whether "each provision requires proof-of an additional fact which the other doe's not." *Blockburger*, 284 U.S. at 304, 52 S.Ct. 180. Here, the court finds that the offense of kidnapping does not require proof of any fact not required to prove hostage taking and that kidnapping is, therefore, a lesser included offense of hostage taking, when the jurisdictional elements are set aside.[2] *See Brown v. Ohio*, 432 U.S. 161, 166–68, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) ("As is invariably true of a greater and lesser included offense, the lesser offense joyriding requires no proof beyond that which is required for conviction of the greater auto theft.")

■ The government argues that, unlike kidnapping, hostage taking does not require proof of purpose, i.e., that the person be seized "for ransom or reward or otherwise." Resp. at 123–24. This contention, however, is belied by the statutory text of the Hostage Taking Statute, which requires proof that the defendant undertook the action "to compel a third person or a governmental organization." 18 U.S.C.

---

2. *See infra* Section III.B.

§ 1203(a). There is simply no way to read this provision as anything other than requiring proof of purpose, i.e., proof that the detention is for the purpose of compelling another. Moreover, the sort of purpose needed to prove hostage taking—compulsion—will always also satisfy the purpose requirement of kidnapping, since kidnapping includes holding a person for *any reason. See Brooks v. United States,* 199 F.2d 336, 336 (4th Cir.1952) (citing *Gooch v. United States,* 297 U.S. 124, 128, 56 S.Ct. 395, 80 L.Ed. 522 (1936)). That is, proof of hostage taking requires proof of compulsion, which will always satisfy the more general purpose requirement of kidnapping.

■ Next, the government argues that kidnapping does not require a threat "to kill, to injure, or to continue to detain," which is required to prove hostage taking. Resp. at 123. As the Defendants point out, it is unlikely kidnapping could be accomplished without at least an implied threat "to kill, to injure, or to continue to detain." Reply at 3. But this dispute misses the point. The inquiry is whether *each* crime requires proof of a fact the other does not, meaning that even if hostage taking requires proof of a threat and kidnapping does not, kidnapping may still be a lesser included offense. This is the relationship of a greater to lesser offense, whereby the greater offense will, by definition, always require proof of some element the lesser does not.

■ So too with the government's contention that the crimes are different because kidnapping does not require action toward a third party. Resp. at 123. The government is correct that kidnapping can be accomplished without action directed toward a third party, since kidnapping occurs when the victim is held for any reason. *See Brooks,* 199 F.2d at 336. What is apparent, however, given the broad sweep of kidnapping's "or otherwise" language, is that proof of hostage taking's requirement that the defendant "compel a third person or a governmental organization" would necessarily entail proof of kidnapping's requirement of holding for "ransom or reward or otherwise." *See supra* at 747.

Holding constant the jurisdictional elements, hostage taking cannot be proven without also proving kidnapping. The question of double jeopardy thus turns on the treatment of the disparate jurisdictional elements.

## B. *Jurisdictional Elements*

The Defendants argue that the differing jurisdictional elements should not be considered for purposes of double jeopardy. *Id.* at 9–10; Reply at 4. In this case, jurisdiction under the Kidnapping Statute stems from the act's occurrence "within the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 1201(a)(2). When the offense occurs outside the United States, hostage taking jurisdiction is present, if "(A) the offender or the person seized or detained is a national of the United States; (B) the offender is found in the United States; or (C) the governmental organization sought to be compelled is the Government of the United States." *Id.* § 1203(b)(1).

This close question—whether the court should consider jurisdictional elements in its double jeopardy analysis—appears to be a matter of first impression in the Fourth Circuit. To date, only three circuits have ruled on this issue. The Fifth Circuit found that jurisdictional elements should not be considered for purposes of double jeopardy. *United States v. Gibson,* 820 F.2d 692 (5th Cir.1987). However, the Fifth Circuit later expressed "some concern with the reasoning of *Gibson* " but continued to follow it as binding precedent. *United States v. Agofsky,* 458 F.3d 369,

371–72 (5th Cir.2006). The Ninth Circuit rejected the Fifth Circuit's approach of never considering jurisdictional elements for purposes of double jeopardy. *United States v. Hairston,* 64 F.3d 491, 496 (9th Cir.1995). Instead, the Ninth Circuit held that Congress may intend jurisdictional elements to address a "separate evil" and that the elements therefore may warrant consideration in the *Blockburger* analysis, *Id.* The Sixth Circuit acknowledged the circuit split on this issue and found that the consideration of jurisdictional elements was suggested by Sixth Circuit precedent. *Angeles,* 484 Fed.Appx. at 34 n. 1. (citing *Pandelli v. United States,* 635 F.2d 533, 539 (6th Cir.1980)).

In *Hairston,* the Ninth Circuit found that Congress meant to cumulatively punish robbery within and without the jurisdiction of the United States and found that "[a]n ordinary crime may take on more significance if it occurs, for instance, in front of the White House, [or] in a federal courtroom." *Hairston,* 64 F.3d at 496. The court found that "[s]trong symbolic reasons" and the interest of the United States as a property owner compelled a finding that the differing jurisdictional elements in that case were intended to create separately-punished crimes. *Id.*

■■■ In the instant case, there is no indication that the differing jurisdictional elements connote a special interest of Congress to punish the subject offenses twice. The court agrees that consideration of jurisdictional elements is permissible, inasmuch as they may reflect the intent of Congress to punish two crimes cumulatively. The court, however, does not agree with the government's suggestion that jurisdictional elements should necessarily be dispositive in the *Blockburger* analysis. Rather, the court considers the differing jurisdictional requirements insofar as they inform the ultimate determination as to whether Congress sought to punish the

same conduct under these two provisions cumulatively. Punishing cumulatively is certainly the prerogative of Congress, *see Martin,* 523 F.3d at 290, but there is no indication Congress intends to do so here.

The Hostage Taking Statute was enacted by Congress in 1984 "to extend jurisdiction over extraterritorial crimes and satisfy the country's obligations as a party to various international conventions." *United States v. Yunis,* 681 F.Supp. 896, 904 (D.D.C.1988) *aff'd,* 924 F.2d 1086 (D.C.Cir. 1991) (citations omitted). The legislative history of the Hostage Taking Statute provides support for the court's finding that Congress enacted the Hostage Taking Statute primarily to extend the jurisdiction of the Kidnapping Statute and did not intend to punish the same act cumulatively under both provisions. The Hostage Taking Statute

> implements the International Convention Against the taking of Hostages. It supplements the Federal Kidnapping Statute to cover certain acts of hostage taking, prohibits hostage taking intended to compel a third person or a government to take [action] or refrain from acting, and expands federal jurisdiction over certain hostage taking, offenses.

H.R. Conf. Rep. No. 1159, at 418 (1984) *reprinted in* 1984 U.S.C.C.A.N. 3710, 3714. The Hostage Taking Statute was meant to ensure the substantive and jurisdictional reach of the Kidnapping Statute to include the acts proscribed by the International Convention Against the Taking of Hostages, *See id.*

Of particular note is a colloquy between Congressman Hughes and Daniel McGovern, the then Acting Legal Adviser of the State Department. At a congressional hearing, Congressman Hughes expressed concern that the conduct criminalized under the hostage taking bill was redundant with kidnapping law already in place. *Terrorism Legislation: Hearing Before the*

*Subcomm. on Crime of the H. Comm. on the Judiciary*, 98th Cong. 36 (1984). Mr. McGovern replied that "while we can reach many of the acts prohibited by [the International Convention Against the Taking of Hostages] we do not have the extraterritorial jurisdiction." *Id.* Congressman Hughes asked whether that meant that the bill would "fill the gaps," to which Mr. McGovern responded in the affirmative. *Id.* When discussing the jurisdictional reach of the Hostage Taking Statute, Congressman Hughes went on to say that he was working on "a definition [of hostage taking] that ... is not so broad that we capture all kidnaping,[3] which is not your intent or certainly would not be our intent." *Id.* at 37–38.[4] That is, Congressman Hughes was attempting to ensure that there were "no acts of redundancy." *Id.* at 36.

The legislative history of the Hostage Taking Statute, therefore, does not read as one would expect, if Congress intended to punish hostage taking cumulatively with kidnapping. Rather, the discussion of jurisdiction in the legislative history suggests that Congress was primarily concerned with ensuring that the United States complied with its treaty obligations while *preventing* overlapping jurisdiction; there is no indication whatsoever that in the case of incidental simultaneous jurisdiction Congress intended to punish under both provisions. Accordingly, the court finds that the differing jurisdictional elements between the Kidnapping Statute and the Hostage Taking Statute reflect the intent of Congress not to punish cumulatively under both provisions.

**3.** In 1994, Congress changed the proper spelling to "kidnapping" from "kidnaping." Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103–322, § 330021, 108 Stat. 1796, 2150 (1994).

**4.** That addition appears to have been made part of the Hostage Taking Statute as

## IV. CONCLUSION

The court, therefore, finds that the Kidnapping Statute and the Hostage Taking Statute impermissibly overlap for purposes of double jeopardy because kidnapping is a lesser included offense of hostage taking. However, the court **DENIES** the Defendants' request to dismiss the offending counts and agrees with the government that to do so would be premature at this juncture. Rather, if the Defendants are convicted of the Kidnapping Counts and the Hostage Taking Counts, they may move to have the Kidnapping Counts dismissed at the conclusion of the guilt/innocence phase. The Clerk is directed to forward a copy of this Memorandum Order to counsel for each Defendant, and to the United States Attorney at Norfolk.

**IT IS SO ORDERED.**

§ 1203(b)(2), which excepts hostage taking that occurs in the United States if "each alleged offender and each person seized or detained are nationals of the United States, and each alleged offender is found in the United States, unless the governmental organization sought to be compelled is the Government of the United States."